CHARLES PIEPER *vs.* PLANNING BOARD OF SOUTHBOROUGH
(and a companion case[1]).

Worcester.    November 2, 1959. — December 17, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Subdivision Control. Equity Pleading and Practice,* Decree, Subdivision
control appeal.

G. L. c. 41, § 81T, as amended through St. 1957, c. 122, and § 81U, as
amended through St. 1955, c. 324, entitled an applicant for approval
by a municipal planning board of a definitive plan of a subdivision of
land to a public hearing by the board within forty-five days after sub-
mission of the plan for approval, and did not authorize the board, if the
applicant desired a public hearing, to dispense with such a hearing in
disapproving the plan even though the board intended to disapprove
it in any event. [160–161]
Mere failure of the planning board of a town to hold a public hearing on
a definitive subdivision plan of land before disapproving it within
forty-five days after its submission for approval did not render the
disapproval a nullity nor lead to the result that upon the expiration of
the forty-five days the plan must, under G. L. c. 41, § 81U, as amended
through St. 1955, c. 324, be "deemed" approved as upon a failure of the
board "to take final action"; such disapproval constituted final action
supporting an appeal under § 81BB, as amended through St. 1957,
c. 199, § 2. [161]
A letter from the planning board of a town to an applicant for the board's
approval of a definitive subdivision plan of land, stating that the board
"disapproves . . . [the] definitive plan," which was sent to the appli-
cant by first class mail but not registered, and an unsigned copy of that
letter, delivered to the town clerk, did not comply precisely with the
requirements of G. L. c. 41, § 81U, as amended through St. 1955, c. 324,
that the board should send "notice of its action" on the plan to the
applicant by registered mail and should file a "certificate of its action"
with the town clerk, but, since the applicant himself treated the
board's disapproval as final action and the informalities of the board's
procedure affected only him, he in the circumstances could not sub-
sequently contend that the board's disapproval was not its final action.
[161–162]
The planning board of a town exceeded its authority under G. L. c. 41,

---

[1] Charles Pieper *vs.* Town Clerk of Southborough.

§ 81U, as amended through St. 1955, c. 324, when it unconditionally disapproved a proper definitive subdivision plan of land solely on the ground that the board felt it essential to have available a proposed engineering survey of the town "before approving any further subdivision of properties." [162–164]

Where it appeared that the planning board of a town unconditionally disapproved without a public hearing a definitive subdivision plan of land within forty-five days of submission of the plan for approval and within that period the applicant treated such disapproval as the board's final action on the plan under G. L. c. 41, § 81U, as amended through St. 1955, c. 324, by appealing its decision to the Superior Court in accordance with § 81BB, as amended through St. 1957, c. 199, § 2, and by filing notice of his appeal with the town clerk, the applicant was not entitled thereafter to assert in a further proceeding, brought against the town clerk, that the clerk should certify that under § 81U the board had failed to take final action on the plan within forty-five days after its submission and therefore that it was "deemed" to have been approved and that such approval was final, and the proceeding against the town clerk must be dismissed. [164]

In a suit in equity under G. L. c. 41, § 81BB, as amended through St. 1957, c. 199, § 2, by way of appeal from a decision of a town planning board unconditionally disapproving a proper plan of a land subdivision without affording the subdivider a public hearing and solely on a ground which this court held was improper, the decree after rescript should recite that the board exceeded its authority in disapproving the plan on such ground, should annul the decision of the board, and should direct the board to hold a public hearing upon the plan within thirty days of the date of the decree and to take final action upon the plan within forty-five days from the date of the decree in a manner consistent with the applicable statutes, rules, and regulations and with this court's opinion. [164]

Two BILLS IN EQUITY, filed in the Superior Court on July 1, 1958, and August 18, 1958, respectively.

The plaintiff appealed from final decrees by *Meagher,* J., dismissing the bills.

*Morris Shapiro,* (*Ashmun Brown* with him,) for the plaintiff.

*Alfred W. Howes,* for the defendants.

CUTTER, J. These are bills in equity respectively filed on July 1, 1958, and August 18, 1958, by Pieper, a landowner, (a) against the planning board (the board) of Southborough (the town), and (b) against the town clerk, with reference to a subdivision plan filed with the board by Pieper. The cases arise under the subdivision control law, G. L.

c. 41, §§ 81K to 81GG, and were submitted to the trial judge upon a statement of agreed facts. A final decree in each case dismissed the bill and declared that the board had disapproved the subdivision plan "in sufficient compliance with the statute," that the action of the board was proper, and that there was no necessity for the board to hold a public hearing under G. L. c. 41, § 81T (as amended through St. 1957, c. 122).[2]  Pieper appealed. The cases were heard on a consolidated record in this court.

The following relevant facts are agreed. On May 28, 1958, Pieper filed the subdivision plan with the board in accordance with all requirements of § 81T. The plan and application complied with the rules and regulations of the board. No public hearing was held by the board within forty-five days[3] of the filing of the application for approval. On June 19, 1958, the board sent Pieper a letter by first class mail, but not registered as required by § 81U, stating that the board "disapproves . . . [the] definitive plan,"

---

[2] Section 81T, as so amended, reads in .part: "Every person submitting a definitive plan of land to the planning board of a city or town for its approval or for a determination that approval is not required shall give written notice to the clerk of such city or town by delivery or by registered mail, postage prepaid, that he has submitted such a plan. . . . Before approval of the definitive plan is given, a public hearing shall be held by the planning board, notice of which shall be given at the expense of the applicant at least ten days prior thereto by advertisement in an official publication of, or in a newspaper of general circulation in, such city or town, and by mailing a copy of such advertisement to all owners of land abutting upon the land included in such plan as appearing upon the most recent tax list."

[3] At the time of filing the application, G. L. c. 41, § 81U (as amended through St. 1955, c. 324), so far as here pertinent, read: "After the hearing required in section eighty-one T, the planning board may approve, modify and approve, or disapprove such plan, shall file a certificate of its action with the . . . town clerk, a copy of which shall be recorded by him in a book kept for the purpose, and shall also send notice of its action by registered mail . . . to the owner of the land to which the plan relates . . . . The planning board shall within ten days after submission of a plan to it consult with the local board of health . . . and if such . . . board is in doubt . . . whether any of the land . . . can be used as building sites without injury to the public health, it shall so notify the planning board in writing within thirty days; the planning board shall then approve the plan on condition that the lots . . . as to which such doubt exists shall not be built upon without prior consent of such board of health . . . , and shall endorse on the plan such condition . . . . Failure of the planning board to take final action, regarding a plan submitted to it, within forty-five days after such submission shall be deemed to be an approval thereof."

Effective as of a date after the filing of the plan, § 81U was further amended by St. 1958, c. 377, § 1. Under § 2 of this amendment none of its provisions here relevant was made applicable to plans theretofore filed.

that the town had applied to a Federal agency for an engineering survey which would be completed in six to seven months at a cost of approximately $40,000, and that "it is necessary to disapprove said . . . plan . . . [because] we [the board] feel it essential we have a master plan available with engineering service before approving any further subdivision of properties." As of November 19, 1958, the survey had not been undertaken. The board did not file a formal certificate of its action with the town clerk (see § 81U) but merely delivered to him an unsigned copy of the board's letter to Pieper of June 19.

After Pieper filed his bill in equity against the board, he requested the town clerk to give him a certificate that the board had failed to take final action "within the 45-day period provided by" § 81U and "that the approval [of the plan] resulting from such failure . . . [had] become final." The town clerk refused to give such a certificate. The bill in equity against the town clerk was then initiated.

On September 10, 1957, the planning board had approved, under the same rules and regulations, a similar plan of subdivision of an adjacent area, of which the present plan is an extension.

1. We interpret the provisions of §§ 81T and 81U (see footnotes 2 and 3, *supra*) as entitling an applicant for approval of a subdivision plan to a hearing, which must obviously take place within the forty-five day period. The two adjacent sections should plainly be read together. Section 81U provides that, after "the hearing required in" § 81T, the "board may approve, modify and approve, or disapprove such plan." This sentence indicates that a hearing is contemplated before any board action, at least in the absence of waiver by the applicant of a hearing, prior to a disapproval by the board, or action by the applicant treating adverse board action taken without a hearing as final action. This indication is not overcome by the statement in § 81T (see footnote 2, *supra*) that "[b]efore approval . . . is given, a public hearing shall be held." That statement is insufficient to lead us to interpret the two sections as mean-

ing that, if the board intends to disapprove the plan in any event, it has complete discretion to dispense with a public hearing. We do not find, on such slim statutory language, any legislative intention to permit an administrative board without a hearing to deny to a landowner, who desires a hearing, important privileges relating to his property.

2. Merely because Pieper was entitled to a hearing, it does not follow that failure to afford him a hearing meant that the plan must be deemed approved under § 81U upon the expiration of forty-five days from the filing of the plan, subject to appeal within the twenty days allowed by c. 41, § 81BB (as amended through St. 1957, c. 199, § 2). Section 81U does not state that disapproval of a plan, without granting a hearing (but prior to the expiration of the forty-five day period), must be treated as a nullity. We should not attribute such an intention to the Legislature unless plainly expressed. If disapproval without a hearing, intended as final action, takes place within the forty-five day period, it is final board action, at least if taken otherwise in accordance with § 81U. Those entitled to appeal to the Superior Court under § 81BB may proceed under that section following such a disapproval.

3. The board failed to comply precisely with the requirements of § 81U for filing a certificate of the board's action with the town clerk and for mailing to Pieper notice of such action by registered mail. The letter of June 19, 1958, was plainly intended to be final board action on the plan, at least until the same plan was filed again or a new plan was presented. Pieper had notice of the board's decision for he filed his bill in equity against the board on July 1, 1958. That he did not receive this notice by registered mail is, in the circumstances, unimportant. See *United States* v. *Kagan*, 129 F. Supp. 331, 332 (D. Mass.).

We assume without deciding that the statute contemplated the filing of a somewhat formally authenticated certificate with the town clerk. Nevertheless, we need not decide whether third persons would be bound, as by a

"certificate" of the type contemplated by § 81U, by the unsigned copy of the letter of June 19, filed by the board with the town clerk. Pieper himself treated the board's action as final by filing not only his bill in equity against the board on July 1, 1958, but also written notice of the bill with the town clerk as required by § 81BB. In his bill, he alleged that the board "without the hearing required by . . . [§] 81T . . . disapproved the . . . plan." Pieper made this allegation well within the forty-five day period available for board action, despite the board's earlier somewhat informal attempts to comply with the requirements of § 81U. These informalities, in the absence of Pieper's action in filing his bill, the board might have cured during the balance of the forty-five day period. Pieper, in these circumstances[4] where the informalities of the board's action affected only him, should not be heard to make the contention, inconsistent with the allegations of his bill, that this administrative action was not final board action. See *Boston* v. *Nielsen*, 305 Mass. 429, 432–433; *Elfman* v. *Glaser*, 313 Mass. 370, 376; *Gordon* v. *Lewitsky*, 333 Mass. 379, 381.

4. In *Daley Constr. Co. Inc.* v. *Planning Bd. of Randolph*, *ante*, 149, 152–155, we have recently considered whether a planning board may disapprove a subdivision plan on grounds other than that the plan itself is inappropriate from the standpoint of design and construction of ways, utilities in the ways, and public health considerations affecting the subdivision advanced by the board of health. We held there that the statute had not made a town water shortage a proper ground for unconditional disapproval of a plan.

---

[4] We do not intimate that, in other circumstances, particularly where the rights of persons other than the applicant and the board may be involved, strict compliance with statutory procedural provisions may not be essential to give constructive notice of board action. Such action may seriously affect public interests and private property rights. The procedural provisions are for the protection of the applicant, possible purchasers from him, the owners of adjacent properties, and the public. Conveyancers must be able to rely upon the required records of board action, which should be carefully made and maintained. See *Carey* v. *Planning Bd. of Revere*, 335 Mass. 740, 745; *S. C.* 335 Mass. 746, 747–748.

Somewhat similar principles apply here. It is stipulated that the "plan . . . complied with the rules and regulations of the . . . board." The sole reason for disapproval stated in the letter of June 19, 1958, was that an engineering survey was desired before any further subdivisions were approved. If the board could delay approving a plan for six to seven months under the statute for the purpose of making studies, there is no reason to suppose that it could not do so for a much longer period. There is no provision of the statute authorizing a board thus indefinitely to delay during the progress of studies the execution of a landowner's proper plans for profitable use of his land in a manner not prohibited by any zoning or other law. Section 81U requires that the board act within forty-five days and, if it does not, the plan will be treated as approved by it. There is no indication in the statute that any extension of time for board action is contemplated.

Section 81Q (as amended through St. 1957, c. 139) requires the adoption of local board regulations setting forth "the requirements of the board with respect to the location, construction, width and grades of . . . proposed ways . . . and the installation of municipal services therein." These provisions strongly imply that compliance with matters within the scope of such regulations is the proper area of the board's scrutiny of plans. See the legislative history described in the *Daley Constr. Co. Inc.* case, *ante*, at pages 153–154, and also the report of the special commission on planning and zoning, 1953 House Doc. No. 2249, at pp. 55–56, where it is said of § 81Q, "The section is mandatory and requires the planning board to adopt rules, instead of being merely permissive as at present. The change has been made so that a prospective subdivider will know *in advance* in every case what will be required of him in the way of street construction and public utilities" (emphasis supplied). This legislative history thus gives no indication that planning boards were to have freedom to disapprove plans which comply with applicable standards merely because the board feels general public considerations make such action desir-

able. If there had been any intention that the board was to have such freedom it would have been natural for the Legislature to express that intention clearly. We find no such expression of intention.

5. Here, where there had been board action, which was not a nullity and was intended as final board disapproval of the plan, and where Pieper by his bill against the board treated the letter of June 19 as such final disapproval, he cannot now assert in his bill against another agent of the town, the town clerk, that the latter must certify that the plan was never the subject of final board action. We do not consider whether any appeal with respect to the failure of the town clerk to act lies under § 81BB or whether mandamus is the only remedy. In any event, the bill against the town clerk was properly dismissed, although the decree must be modified to omit declarations, unnecessary to the disposition of the case and in various respects inconsistent with the principles here stated.

6. The final decrees are reversed. In the bill in equity against the board a new decree is to be entered stating (a) that the board exceeded its authority in refusing approval of Pieper's plan on the ground of the proposed town survey, (b) annulling the action of the board, and (c) directing the board to hold a public hearing upon the plan within thirty days of the date of the new decree and to take final action upon the subdivision plan within forty-five days from the date of the new decree in a manner consistent with the applicable statutes, rules, and regulations and with this opinion. A new decree is to be entered in the case against the town clerk merely dismissing the bill.

*So ordered.*