JULIUS DOLINER, trustee, *vs.* PLANNING BOARD OF MILLIS.

Norfolk. May 3, 1961. — June 9, 1961.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Subdivision Control. Zoning,* Amendment of by-law or ordinance. *Statute,* Retroactive statute. *Equity Pleading and Practice,* Decree, Subdivision control appeal.

Mere failure of the planning board of a town to hold a public hearing on a definitive subdivision plan of land before expressly disapproving it within sixty days after its submission for approval under G. L. c. 41, § 81U, as amended through St. 1958, c. 377, § 1, did not render the disapproval a nullity nor lead to the result that upon expiration of the sixty days the plan must be "deemed" to be approved by failure of the board "to take final action." [5]

Under G. L. c. 41, § 81M, the planning board of a municipality must require that a subdivision plan of land comply with the applicable zoning ordinance or by-law as well as with the rules and regulations adopted by the board under § 81Q. [6]

A revised zoning by-law of a town adopted at a town meeting a month before a definitive subdivision plan of land was submitted to the town's planning board for approval in April, 1959, was, within G. L. c. 41, § 81M, as amended through St. 1957, c. 265, "the applicable" zoning by-law with which at that time the plan might have been required by the board to comply, even though the revised by-law had not then become effective through approval by the Attorney General and publication under G. L. c. 40, § 32. [6–8]

Where it appeared, in a suit in equity under G. L. c. 41, § 81BB, by way of appeal from a decision of a town planning board disapproving under

§ 81U a definitive subdivision plan of land, that the decision was made without receiving a report from the board of health and without holding a public hearing on the plan, this court ordered entry of a decree annulling the decision of the board and remanding the plan to it for consideration, and also directing the board to hold a public hearing upon the plan and to obtain the recommendations of the board of health thereon, each within forty-five days from the date of the decree, and to take final action upon the plan within sixty days from the date of the decree. [9]

Two BILLS IN EQUITY, filed in the Superior Court on June 2, 1959, and June 10, 1959, respectively.

The defendant appealed from final decrees by *Good,* J.

*Samuel H. Cohen,* (*Anthony T. Petrocca* with him,) for the defendant.

*John J. Fitzpatrick,* (*Eugene L. Tougas* with him,) for the plaintiff.

CUTTER, J. These two appeals from action of the planning board of Millis are brought under the subdivision control law, G. L. c. 41, §§ 81K to 81GG, as amended, see especially § 81BB. Doliner alleged in each appeal that he, as trustee, owned land in Millis and that, on April 8, 1959, he had applied for approval of a definitive subdivision plan. In one appeal filed June 2, 1959, Doliner also alleged that by letter dated May 26, 1959, the planning board had informed him of the disapproval of the plan for reasons stated below (see *Doliner* v. *Town Clerk of Millis, post,* p. 10). In the other appeal, filed June 10, 1959, Doliner alleged that the planning board had failed "to take any valid final action concerning" his subdivision plan "within sixty days following submission thereof as required by" G. L. c. 41, § 81U.

The trial judge made the following findings. On April 8, 1959, a month after a town meeting had adopted a new zoning by-law, Doliner filed with the planning board, and on April 9, 1959, with the town board of health, applications for approval of his subdivision plan. He notified the town clerk of this action. The board of health made no report upon this plan to the planning board within forty-five days of the date of the filing. On May 26, 1959, the planning

board notified the town clerk and Doliner that it had dis-approved the plan because the "[l]ot sizes fail to comply with the [z]oning [b]y-law and [m]ap as accepted . . . at the [a]nnual [t]own [m]eeting of March 9, 1959." The planning board held no public hearing prior to this dis-approval.

At the town meeting on March 9, 1959, the town voted to adopt the proposed zoning by-law then on file with the town clerk and to repeal the then existing zoning by-law passed in 1956, "such repeal to be effective only if and when" the new by-law should take effect after approval by the Attor-ney General and after publication. See G. L. c. 40, § 32 (as amended through St. 1952, c. 337). On April 1, 1959, the town clerk forwarded the new by-law to the Attorney General, who approved it by letter dated June 9, 1959.

The judge further found that Doliner's plan was "filed in accordance with the rules and regulations and the zoning [by-]laws . . . in existence" on April 8, 1959, and that the new zoning by-law was not then in effect. He purported to "find," in effect thereby ruling, (a) "that no valid action . . . was taken by the . . . planning board within sixty days after" Doliner's submission of his subdivision plan; (b) that the amended zoning by-law "did not control" Doliner's plan; (c) that the board of health's failure to report within forty-five days "is deemed . . . approval of the . . . plan"; and (d) "that the failure of the planning board to approve or disapprove the . . . plan within sixty days . . . is deemed . . . approval . . . and such approval became final on that date [June 8, 1959]."

A final decree was entered that the plan was "deemed approved" by the planning board and the board of health "by reason of . . . [their] failure . . . to act thereon within the time prescribed in" G. L. c. 41, § 81U; that this approval has become final; and that "the lots shown on . . . [the] plan conform to the residential use requirements of the zoning by-law . . . in effect on June 8, 1959." The planning board appealed.

1. Pertinent provisions of the subdivision control law

appear in the margin.[1]   At the time of Doliner's filing of
his definitive plan on April 8, 1959, and on May 26, 1959,
when the planning board notified him and the town clerk
of its disapproval, none of the 1960 amendments of c. 41
(mentioned in footnote 1) had taken effect.   Some of the
pertinent statutory provisions were considered by this
court in *Daley Constr. Co. Inc.* v. *Planning Bd. of Ran-*

---

[1] General Laws c. 41, § 81M (as amended through St. 1957, c. 265), reads
in part: "The powers [under the subdivision control law] of a planning board
. . . shall be exercised with due regard . . . for insuring compliance with the
applicable zoning . . . by-laws . . . .   It is the intent of the . . . law that
any . . . plan . . . shall receive the approval of . . . [the planning] board if
said plan conforms to the recommendation of the board of health and to the
reasonable rules and regulations of the planning board pertaining to sub-
divisions . . . [subject to a provision for waiver not here applicable]."   Sec-
tion 81Q (as amended through St. 1960, c. 417) reads: "After . . . public
hearing a planning board shall adopt . . . reasonable rules and regulations
relative to subdivision control not inconsistent with the subdivision control
law or with . . . any valid . . . by-law of the . . . town. . . .   Except . . .
as it may require compliance with . . . existing zoning . . . by-laws, no rule
or regulation shall relate to the size, shape, width, frontage or use of lots
within a subdivision . . . .   [The following sentence was inserted by St. 1956,
c. 307, and the italicized words were added by St. 1960, c. 196, which also
omitted the bracketed words.]   Once a definitive plan *has been submitted to
a planning board* . . . until final action has been taken thereon by the plan-
ning board or the [forty-five day] time [limit] for such action *prescribed by
section eighty-one U* has elapsed, the rules and regulations governing such plan
shall be those in effect relative to subdivision control at the time of the sub-
mission of such plan. . . ."   Section 81T (as amended through St. 1960,
c. 266, § 1) reads in part: [The italicized words in the next sentence were
added by St. 1960, c. 266, § 1.]   "Before approval, *modification and approval,
or disapproval* of the definitive plan is given, a public hearing shall be held
by the planning board . . . ."   Section 81U (as amended through St. 1960,
c. 153, and c. 266, § 2, amending the section as it theretofore appeared in
St. 1958, c. 377, § 1) reads in part: "When a definitive plan . . . is sub-
mitted . . . a copy . . . shall also be filed with the board of health . . .
[which] shall, within forty-five days . . . report to the planning board in
writing approval or disapproval . . . .   Failure so to report shall be deemed
approval by such board . . . .   After the [public] hearing . . . and after the
report of said health board . . . or the lapse of forty-five days without such
report, the planning board shall approve, or, if such plan does not `comply
with the subdivision control law or the rules and regulations of the planning
board or the recommendations of the health board . . . shall modify and
approve or shall disapprove such plan.   [The italicized words next following
were inserted by St. 1960, c. 153.]   *In the event of disapproval, the planning
board shall state in detail wherein the plan does not conform to the rules and
regulations of the planning board or to the recommendations of the health
board . . . and shall revoke its disapproval and approve a plan which, as
amended, conforms to such rules and regulations or recommendations. . . .*
[The italicized words next following were inserted by St. 1960, c. 266, § 2.
The remaining language of this next sentence appeared in St. 1958, c. 377,
§ 1, fourth paragraph.]   *Failure of the planning board either to take final
action or to file with the city or town clerk a certificate of such action* regard-
ing a plan submitted by an applicant within sixty days after such submission
. . . shall be deemed to be an approval thereof. . . ."

*dolph,* 340 Mass. 149, 151–156, and in *Pieper* v. *Planning Bd. of Southborough,* 340 Mass. 157.

The *Pieper* case decided (see pp. 159–161) that under § 81U (as amended through St. 1955, c. 324) disapproval of a plan by the planning board without granting a public hearing was not to "be treated as a nullity." Statute 1958, c. 377, § 1, made changes in the language of § 81U, including the substitution of "shall" for "may" in the language with respect to approval or disapproval of a subdivision plan. These changes do not require a different conclusion (from that in the *Pieper* case) as to the effect of planning board disapproval of a subdivision plan without holding the public hearing to which an applicant is entitled. Such disapproval, if intended by the planning board as final board action (and the letter of May 26, 1959, seems to have been so intended), operates as a disapproval and constitutes final board action, despite the failure to hold the public hearing contemplated by the statute.

The trial judge thus incorrectly ruled that the planning board had approved Doliner's plan by failing to act on or before June 8. The board's action on May 26 not only gave Doliner the right to appeal to the Superior Court under § 81BB (as amended through St. 1957, c. 199, § 2) but also prevented approval of the plan through lapse of time without action.

2. The planning board on May 26, 1959, disapproved Doliner's subdivision plan because it failed to comply with the new zoning by-law which had not then become effective under G. L. c. 40, § 32, as amended. Whether this was proper action, apart from the failure of the planning board to grant a public hearing upon the plan, depends upon the interpretation of several possibly conflicting statutory provisions. See 1959 Ann. Surv. Mass. Law, §§ 12.10–12.11. These appear in two separate chapters of the General Laws. Our duty is to reconcile these statutory provisions, if possible, so that they will accomplish harmoniously the legislative purpose so far as that can be ascertained. See *Real Properties, Inc.* v. *Board of Appeal of Boston,* 311 Mass. 430, 436; *Tilton* v. *Haverhill,* 311 Mass. 572, 577–578.

The subdivision control law contemplates that the planning board shall ensure compliance of subdivision plans not only with the zoning by-law, but also with the rules and regulations which must be adopted under § 81Q (see the *Pieper* case, at p. 163), by each planning board in a community where the subdivision control law is in effect. See also the legislative history reviewed in the *Pieper* case and in the *Daley Constr. Co. Inc.* case, 340 Mass. 149, 153 et seq. Section 81M (see footnote 1, *supra*) states (1) that the planning board's powers "shall be exercised with due regard . . . for insuring compliance with the applicable zoning . . . by-laws" and also (2) that a plan "shall receive . . . approval . . . if . . . [the] plan conforms to the recommendation of the board of health and to the reasonable rules and regulations of the planning board." Although under § 81Q the planning board's rules and regulations shall not relate to size of lots, except as they "may require compliance with . . . existing zoning . . . by-laws" (see footnote 1, *supra*), the planning board seems to be expected under § 81M to require compliance with any applicable zoning by-law as well as with any rules and regulations of its own. It must be determined, however, in interpreting § 81M what is an "applicable" zoning by-law.

Under G. L. c. 40, § 32, the new Millis zoning by-law did not become effective until approved by the Attorney General on June 9, 1959 (and until there had been compliance with other provisions of the section), although it was adopted by the town meeting on March 9, 1959. Nevertheless, under G. L. c. 40A, § 11, as revised by St. 1954, c. 368, § 2,[2] no building permit (to build upon a lot shown on the plan) would protect the owner of the lot (a) if the lot did

[2] Section 11, as thus revised, reads: ". . . in a town, no zoning by-law or amendment . . . shall affect any permit issued or any building or structure lawfully begun before notice of hearing before the planning board . . . has first been given or before the issuance of the warrant for the town meeting at which such by-law or amendment is adopted, whichever comes first; provided, [proviso not pertinent] . . . . The issuance of a permit . . . after such notice has been given or such warrant has been issued, shall not justify the violation of a zoning . . . by-law or an amendment thereto subsequently adopted as the outcome of such hearing and in substantial accord with such notice or warrant; provided, the subsequent steps required for the adoption of such . . . by-law or amendment thereto are taken in their usual sequence without unnecessary or unreasonable delay."

not comply with the new zoning by-law (and the planning board found that it did not) and (b) if the permit was issued after public notice had been given of the hearing before the planning board upon the proposed new zoning by-law. See G. L. c. 40A, § 6, as amended by St. 1957, c. 137. See also the later amendment of § 6 by St. 1959, c. 317, § 1. In the sense that c. 40A, § 11, and the new by-law would prevent issuing a valid building permit (if the new by-law was later adopted by the town, approved by the Attorney General, and published, see c. 40, § 32), the new by-law was "applicable" to Doliner's subdivision plan. Accordingly, having in mind c. 40A, § 11, the Legislature can hardly have intended that a planning board must disregard the terms of a zoning by-law, already adopted by the town even if not yet approved by the Attorney General, when called upon to consider a subdivision plan violating that by-law. Particularly is that true, where the submission of the plan, a substantial time after the town's action, could have been found to have been a belated attempt to circumvent the new by-law. If the planning board were to approve such a plan, its action would be an empty gesture, and, in view of § 11, might be seriously misleading to a purchaser of the lot from Doliner.

The situation is further complicated by the provisions of c. 40A, § 7A. This section was originally enacted by St. 1957, c. 297. It then contained only the second sentence of the 1959 form of § 7A, part of which appears in the margin.[3] By St. 1959, c. 221, effective July 20, 1959, the

---

[3] Section 7A, as amended through St. 1959, c. 221, reads in part, "When a preliminary plan . . . has been submitted to a planning board . . . the land shown . . . on the definitive plan evolved therefrom shall be governed by the zoning . . . by-law in effect at the time of the submission of the preliminary plan *while such plan or plans are being processed under the subdivision control law;* provided, that the definitive plan . . . is thereafter duly approved; and provided, further, that the land shown thereon is to be developed for residential use. Notwithstanding any other provision of law, no amendment to any zoning . . . by-law shall apply to or affect any lot shown on a definitive subdivision plan for residences *which has been previously approved* by a planning board until a period of three years from the date of such approval has elapsed, provided said lot complies with . . . the zoning . . . by-law existing at the time of said approval . . ." (emphasis supplied). A third sentence, not pertinent to this case, was made by St. 1960, c. 291. Section 7A was comprehensively revised by St. 1961, c. 435, § 2, approved after the arguments in this case and not effective until ninety days after May 5, 1961.

first sentence was added. This amendment, of course, did not apply to the planning board's action on May 26, 1959.

In the circumstances, our efforts to reconcile these different statutes, enacted and amended at different times, lead us to the following conclusions. As the statutes stood on May 26, 1959, the planning board could properly have disapproved Doliner's subdivision plan (if it had held a public hearing on the plan) on the ground that the plan was inconsistent with the new by-law, in its discretion making its disapproval subject to permission to resubmit the plan if the Attorney General disapproved the new by-law. Because no public hearing upon the plan was held, however, the plan, in any event, must now be remanded to the planning board for new consideration, as was done in the *Daley Constr. Co. Inc.* (340 Mass. 149, 156) and *Pieper* (340 Mass. 157, 164) cases. If Doliner's plan should now be approved, the second sentence of the 1959 version of § 7A (see footnote 3, *supra*) by its terms does not purport to protect from the new by-law lots shown on the plan which do not conform to that by-law which we assume has become effective. The fair construction, in a manner consistent with the public interest, of all the statutory provisions presently effective, especially c. 40A, § 11 (footnote 2, *supra*), seems to us to permit the planning board now to rely upon the new zoning by-law[4] as a basis for its action together with any other matters which it may properly consider under § 81U (e.g. imposition of provisions regulating the construction of ways and the installation of utilities) under any rules and regulations in effect when Doliner submitted the plan on April 8, 1959. If, however, the planning board acts after St. 1961, c. 435, § 2, has become effective, questions may arise under § 7A, as thereby amended. No issue with respect to this 1961 amendment has been argued and the pendency of the amendment was not brought to our

---

[4] The new by-law became effective upon the Attorney General's approval (June 9, 1959) and further compliance with c. 40, § 32. Statute 1959, c. 221, inserting in § 7A its present first sentence, became effective July 20, 1959. To the extent that c. 221 affects substantive rights to approval we construe it as applicable to plans thereafter filed only. See *Brucato* v. *Lawrence,* 338 Mass. 612, 617.

attention. Accordingly, we express no opinion with respect to it or its effect.

3. It is not clear from the trial judge's subsidiary findings whether in 1959 the planning board considered any issue other than whether the plan complied with the new by-law. The planning board's letter of May 26, 1959, suggests that it did not do so. The board of health may have failed to act at all, because it was of the opinion that the plan in any event could not be approved because in violation of the new by-law. In the circumstances, the new decree (see c. 41, § 81BB) should appropriately give the board of health further opportunity to report on the plan.

The judge's finding that the "plan was filed in accordance with the rules and regulations and the zoning laws then in existence" implies that some rules and regulations had then been adopted. Counsel at the arguments expressed doubt whether regulations had then been promulgated under § 81Q. If there were no such rules and regulations, any such rules and regulations adopted after April 8, 1959, would not be applicable to the planning board's action on Doliner's plan, by reason of the last sentence quoted from § 81Q in footnote 1, *supra.*

4. The final decree is reversed. A new decree is to be entered (a) annulling the decision of the planning board and remanding the plan to it for consideration; (b) directing the planning board to hold a public hearing upon Doliner's plan and to obtain the recommendations of the town board of health thereon, each to be accomplished within forty-five days from the date of the new decree; and (c) directing the planning board to take final action upon the plan within sixty days from the date of the new decree in a manner consistent with the applicable statutes, by-laws, and rules and regulations (if any), and with this opinion.

*So ordered.*