BUILDING INSPECTOR OF ACTON & others *vs.* BOARD OF APPEALS OF ACTON & others.

Middlesex.    January 8, 1965. — February 4, 1965.

Present: SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

Zoning, Amendment of by-law or ordinance; Board of appeals: appeal to board. *Statute,* Retroactive statute.

By reason of the expiration of the three year period specified in G. L. c. 40A, § 7A, as amended through St. 1960, c. 291, a residential lot shown on a subdivision plan approved by a town's planning board under the Subdivision Control Law in September, 1957, was governed by an amendment of the town's zoning by-law adopted in December, 1960; the amendment of § 7A by St. 1961, c. 435, § 2, did not operate retroactively to make the amendment of the zoning by-law inapplicable to the lot for a period of five years after approval of the plan; and a permit for construction on the lot of a two family house, allowed as of right by the zoning by-law prior to its amendment but no longer allowed as of right after that amendment, was erroneously issued on an application made in 1962 within the five year period.   [455–457]
The question of the propriety of the issuance of a building permit for a lot by the town's building inspector after he had referred the applica-

tion for the permit to the selectmen as the officials charged with enforcement of the town's zoning by-law and they had determined that the permit should issue was brought before the zoning board of appeals under G. L. c. 40A, § 13, as amended through St. 1955, c. 325, § 1, by an appeal to the board, in form from the decision of the selectmen, taken by persons living in the immediate neighborhood of the lot. [457]

BILL IN EQUITY filed in the Superior Court on March 15, 1963.

Certain persons intervened and appealed from a final decree entered after hearing by *Brogna, J.*

The case was submitted on briefs.

*Leonard E. Rae* for the interveners.

*Julian J. D'Agostine & John W. Lynch* for the plaintiffs.

CUTTER, J. In 1955, members of a family named Sweeney who owned a large farm in Acton filed with the planning board of Acton a subdivision plan which was approved by the board. In 1957 a "substantial revision" of the original plan (adding one street and covering four additional acres) was filed. The planning board approved this plan on September 23, 1957. The approval was indorsed on the revised plan and the plan was recorded in the registry of deeds. No public hearing concerning the revised plan was held by the planning board. Prior to its approval no notice of its filing was given to any abutting owner, or filed with the town clerk.[1]

On September 9, 1962, Daniel Sweeney, as owner of lots 302 to 305 shown on the subdivision plan applied to the building inspector for a permit to build a two family house on each lot. Under the zoning by-law of the town, adopted on December 20, 1960, two family houses were not per-

---

[1] Several lots in the subdivision "have been sold to purchasers in good faith." In view of the grounds of our decision, however, we have no occasion now to consider whether these procedural deficiencies made the approval of the plan invalid or subject to collateral attack in respect of either lots in the hands of purchasers having notice of the deficiencies or lots owned by purchasers not having such notice. It also is not necessary to decide whether procedurally improper approval of a subdivision plan will have the same effect as procedurally improper disapproval. Cf. *Pieper* v. *Planning Bd. of Southborough,* 340 Mass. 157, 161; *Doliner* v. *Planning Bd. of Millis,* 343 Mass. 1, 5. Cf. also *Selectmen of Pembroke* v. *R. & P. Realty Corp., ante,* 120, 124–129.

mitted in the area in which lay lots 302 to 305, except with the approval of the board of appeals by special permit. In 1957, when the revised subdivision plan was approved by the planning board two family houses were permitted in the area. The building inspector referred the applications to the board of selectmen, the agency charged by the zoning by-law with its enforcement. The selectmen voted on September 27, 1962, to issue the permits. The building inspector then issued the permits.

An appeal to the town's board of appeals was taken on October 17, 1962, and supplemented on October 23, 1962, from the selectmen's decision relating to the issuance of the building permits for lots 302 to 305.[2] After public hearing the board of appeals concluded that the selectmen's decision was erroneous and ordered the decision rescinded, in effect thus cancelling the permits.

The present proceeding was initiated by Paul J. Sweeney, Inc., Daniel Sweeney, Beatrice Sweeney, and the building inspector against the board of appeals. The bill seeks to have the board's decision annulled and a decree entered authorizing completion of two family dwellings on lots 302 to 305. The trial judge, upon a stipulation as to certain evidence and after hearing certain other evidence, made findings. He ordered that a decree be entered annulling the board's decision and reinstating the permits. An appeal from the final decree was claimed by certain persons who had appealed to the board of appeals and had been allowed to intervene in the proceedings in the Superior Court.

1. The trial judge correctly stated that the "real issue . . . is whether . . . the plan . . . approved by the [p]lanning [b]oard on September 23, 1957, showing these lots at a time when the [z]oning [b]y-law . . . permitted two-family dwellings, gives the Sweeneys a right as . . . matter

---

[2] By inadvertence, the appeal spoke of one Paul J. Sweeney as the owner of the lots. The lots, however, were referred to by number. The appeal clearly related to the selectmen's decision and the trial judge correctly ruled that the error was immaterial. That decision was sufficiently indicated by the record of the board and the permits issued as a consequence of the decision.

of law to obtain permits to build . . . two-family houses
. . . as applied for on September 9, 1962, just short of five
years after the [planning board's] approval of the plan."
The judge ruled that the plan was a definitive plan under
the Subdivision Control Law (G. L. c. 41, §§ 81K–81GG) and
was governed by G. L. c. 40A, § 7A (as amended through
St. 1961, c. 435, § 2), which had become effective August 3,
1961.[3]  Under § 7A as it existed in 1957 (and even as
amended in 1959 and 1960, see fn. 3) the 1960 amendments
of the zoning by-law could not be applied to lots 302 to 305
for three years after the planning board's approval.  This
three year period thus expired on September 23, 1960.
The 1960 by-law amendments, when thereafter adopted, thus
applied to those lots.  The substantive rights of the own-
ers of those lots and of owners of land in the area would
have been affected if St. 1961, c. 435, § 2 (when it became
effective nearly a year later), had reinstated retroactively
the inapplicability of the 1960 by-law amendments to the
lots.  At least in the absence of very clear statutory lan-
guage, we do not apply legislation retroactively in such a
manner as to affect substantive rights.  See *Campbell* v.
*Boston,* 290 Mass. 427, 429; *Brucato* v. *Lawrence,* 338 Mass.
612, 617; *State Tax Commn.* v. *Fitts,* 340 Mass. 575, 578;

---

[3] Section 7A, as thus amended in 1961, reads in part, "When a preliminary
plan referred to in . . . [c. 41, § 81S] has been submitted to a planning board
. . . the land shown on such preliminary plan and on the definitive plan
evolved therefrom . . . shall be governed by *applicable* provisions of the zon-
ing . . . by-law in effect at the time of the submission of the plan first sub-
mitted while such plan or plans are being processed . . . and, if said defini-
tive plan becomes approved . . . said provisions of the . . . by-law in effect
at the time of the submission of the first submitted plan shall govern the land
shown on such approved definitive plan *for a period of five years* from the
date of such approval notwithstanding any other provision of law . . . pro-
vided . . . that the land shown thereon is to be developed for residential use"
(emphasis supplied).  Section 7A as in force in 1957 (see St. 1957, c. 297),
however, read, "Notwithstanding any other provision of law, no amendment
to any zoning . . . by-law shall apply to or affect any lot shown on a definitive
subdivision plan for residences which has been previously approved by a
planning board until *a period of three years* from the date of such approval
has elapsed, provided said lot complies with the provisions of the zoning ordi-
nance or by-law existing at the time of said approval" (emphasis supplied).
Amendments of § 7A by St. 1959, c. 221, and by St. 1960, c. 291, did not
change the three year period referred to in the 1957 statute.  That period was
first made five years by the 1961 amendment quoted above. .

*Doliner* v. *Planning Bd. of Millis,* 343 Mass. 1, 8, fn. 4; *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 343 Mass. 613, 619–620. Cf. *Lindberg* v. *State Tax Commn.* 335 Mass. 141, 143–144 (State legislation applied retroactively where it adversely affected only the State's own rights). The 1960 by-law amendments governed and restricted the use of lots 302 to 305 in 1962 (when applications for the permits were made) and the permits were improperly granted.[4]

2. The plaintiffs argue that the board of appeals did not have jurisdiction. The appeal, in form from the decision of the board of selectmen, in substance sufficiently raised the issue of the propriety of the permits. The decision of the board of selectmen seems to have been based on advice of the town counsel to them that the permits should issue because the 1960 by-law amendments did not apply to lots 302 to 305, in view of the 1961 amendment of § 7A (see fn. 3). Those who appealed to the board included persons living in single family dwellings on the same or the opposite side of the street on which lots 302 to 305 lie and owners of land abutting on, or near, one or more of those lots. Others who appealed live in the same subdivision. In the circumstances, all of such persons may properly be regarded as aggrieved. *Marotta* v. *Board of Appeals of Revere,* 336 Mass. 199, 202–205. The appeal appropriately brought in issue the granting of the permits.[5]

3. The final decree is reversed. A new final decree is to be entered stating that the decision of the board of appeals did not exceed its authority and that no modification of its decision is required.

*So ordered.*

---

[4] There is no need to consider what special significance may attach to the use in the 1961 amendment of § 7A of the word "applicable" (set out in italics in § 7A as quoted, fn. 3), although this subject was discussed at some length in the decision of the board of appeals. See G. L. c. 40A, § 5A, as amended by St. 1961, c. 435, § 1. Cf. *Smith* v. *Board of Appeals of Needham,* 339 Mass. 399.

[5] The zoning by-law (art. VI-A-1) afforded, without prescribing any time limit for action, an appeal to the board of appeals to persons "aggrieved by any decision of the [b]oard of [s]electmen." See G. L. c. 40A, § 13 (as amended through St. 1955, c. 325, § 1). That opportunity for an appeal may also have existed under § 8 of the town's building by-law is of no significance.