JULIUS DOLINER, trustee, *vs.* PLANNING BOARD OF MILLIS.

Norfolk.    October 7, 1965. — December 7, 1965.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Subdivision Control. Zoning,* Amendment of by-law or ordinance. *Statute,* Retroactive statute.

The term "applicable provisions" in G. L. c. 40A, § 7A, as amended by St. 1961, c. 435, § 2, means those provisions of a zoning ordinance or by-law relevant to the particular land shown on a plan submitted to the

planning board for approval under the Subdivision Control Law and
to that plan.   [696]

St. 1961, c. 435, § 2, amending G. L. c. 40A, § 7A, and providing that
land shown on a plan submitted to a planning board for approval under
the Subdivision Control Law "shall be governed by applicable provi-
sions of the zoning . . . by-law in effect at the time of the submission
of the plan . . . while such plan . . . [is] being processed under" the
Subdivision Control Law, did not operate retroactively so as to exempt
a definitive plan of land pending before the planning board of a town
on the effective date of c. 435, § 2, and disapproved by the board there-
after, from compliance with a revised zoning by-law which had been
adopted at a town meeting shortly before the plan was submitted to the
planning board for approval and which, although not in effect at the
time of submission, took effect before the effective date of c. 435, § 2.
[697–698]

Nothing in St. 1965, c. 366, indicated a legislative intent that the statutory
changes in G. L. c. 40A, § 7A, effected by St. 1961, c. 435, § 2, should
apply retroactively.   [698]

·BILL IN EQUITY filed in the Superior Court on May 25,
1962.

The case was reported by *Cahill, J.*

*John J. Fitzpatrick* (*Eugene L. Tougas* with him) for
the plaintiff.

*Samuel H. Cohen* (*Anthony T. Petrocca* with him) for
the defendant.

CUTTER, J.   This is a further stage of the controversy
discussed in *Doliner* v. *Planning Bd. of Millis,* 343 Mass. 1,
decided June 9, 1961, hereafter called the 1961 decision.
See also *Doliner* v. *Town Clerk of Millis,* 343 Mass. 10.
We restate certain facts then before us.

On March 9, 1959, the town voted to adopt a proposed
zoning by-law and to repeal the then existing 1956 by-law,
"such repeal to be effective . . . when" the new by-law
should take effect after approval by the Attorney General.
On April 1, 1959, the town clerk transmitted the new by-law
to the Attorney General, who approved it on June 9, 1959.

On April 8, 1959, Doliner (as trustee) filed with the plan-
ning board for approval under the subdivision control law
a definitive plan of a land subdivision.   Under the old zon-
ing by-law the lots shown on the plan were of adequate size.
Under the new by-law, the lots shown on the plan would

have been too small.  The planning board on May 26, 1959, notified Doliner that the plan had been disapproved.  When Doliner's appeal reached this court, we (in the 1961 decision) directed that the planning board's decision be annulled (343 Mass. 1, 9) and that the plan be remanded to the board for further consideration,[1] in the course of which the board was to obtain the recommendations of the board of health and to hold a public hearing.

In the 1961 decision (343 Mass. 1, 5–8), effort was made to reconcile conflicting statutory provisions.  Largely upon the basis of G. L. c. 40A, § 11 (as inserted by St. 1954, c. 368, § 2), we concluded (343 Mass. 1, 6–7, 8) that the new by-law was "applicable" (see G. L. c. 41, § 81M, as amended through St. 1957, c. 265) to the plan when filed, even though the new by-law had not been approved by the Attorney General and had not become effective.  We also held (343 Mass. 1, 7–8) that the amendment of G. L. c. 40A, § 7A, by St. 1959, c. 221, which became effective July 20, 1959, did not have application to the planning board's prior action.

Between the arguments and the decision in the earlier *Doliner* case, the Legislature further amended c. 40A, § 7A, by the enactment of St. 1961, c. 435, § 2, which became effective on August 3, 1961, ninety days after its approval.  We pointed out (343 Mass. 1, 8) that, in the event of planning board action after c. 435 became effective, "questions . . . [might] arise under § 7A, as thereby amended."  Because "[n]o issue with respect to this 1961 amendment ha[d] been argued and the pendency of the amendment . . . [had] not [been] brought to our attention" by counsel in the earlier case, we expressed (343 Mass. 1, 9) "no opinion with respect to it or its effect."[2]

After our 1961 decision, the plan was remanded to the

---

[1] In this we followed the disposition made in somewhat similar earlier cases. See *Daley Constr. Co. Inc.* v. *Planning Bd. of Randolph*, 340 Mass. 149, 156, and *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 164.

[2] General Laws c. 40A, § 7A, has been considerably amended since the 1961 decision, not only by St. 1961, c. 435, § 2, but also by St. 1963, cc. 578 and 591; St. 1964, c. 688; and St. 1965, cc. 65 and 366.

planning board by a final decree of the Superior Court after rescript, entered March 12, 1962. On April 17, 1962, the planning board received the recommendation of the town board of health, which declined to "approve any septic tank installations" until certain data relating to proposed sewerage disposal were furnished and invited attention to certain other matters. The record does not convince us that these health matters have been dealt with at all by Doliner in presenting his plan or that they have been passed upon by the board.

"On April 24, 1962, the planning board held a public hearing on the original definitive . . . plan," which it disapproved on May 7, 1962. The letter of disapproval shows that the board's action was "[b]ecause the lots on . . . [the] plan are inconsistent with the requirement of the . . ; [new] zoning by-law." No reliance was placed upon the recommendations of the board of health in the letter of disapproval.

On May 25, 1962, Doliner appealed to the Superior Court from the planning board's second disapproval of his plan. The case was heard on a statement of agreed facts, in effect a case stated, upon the basis of which we have set forth the facts already outlined so far as they do not appear in the 1961 decision. The trial judge on January 27, 1965, without making any decision, reported the case to this court.

Prior to the enactment of St. 1961, c. 435, § 2, the provisions of c. 40A, § 7A, as appearing in St. 1959, c. 221, as amended by St. 1960, c. 291,[3] did not deal at all with a situ-

---

[3] Section 7A, prior to the enactment of St. 1961, c. 435, read: "[A] When *a preliminary plan* referred to in . . . [G. L. c. 41, § 81S] has been submitted to a planning board . . . the land shown on such preliminary plan and on the definitive plan evolved therefrom shall be governed by the zoning . . . by-law in effect at the time of the submission of the preliminary plan while such plan or plans are being processed under the subdivision control law; provided, that the definitive plan is duly submitted within seven months from the date on which the preliminary plan was submitted [B] *and is thereafter duly approved;* and provided, further, that the land shown thereon is to be developed for residential use. Notwithstanding any other provision of law, no amendment to any zoning . . . by-law shall apply to or affect any lot shown on a definitive subdivision plan for residences [C] *which has been previously approved* by a planning board until a period of three years from the date of such approval has elapsed, provided said lot complies with the

ation where, as in the present case, no preliminary plan was filed (see fn. 3 at point [A]). If the applicant for approval then had proceeded in the first instance to file only what purported to be a definitive plan, nothing in § 7A would have affected either the applicant's procedural or substantive rights until and unless a definitive plan had been approved (see fn. 3, at points [B], [C], and [F]). Also, to obtain the benefits of the later sentences of § 7A, as it then stood, the plan must comply with the by-law "existing" at the time of approval (see fn. 3 at point [D]), or endorsement that approval was not necessary (see fn. 3 at point [F]).

Section 7A thus had no direct application to the facts considered in the 1961 decision. Because, however, following our 1961 decision, the planning board took no further action until after c. 435 had become effective, it has become necessary for us to decide questions expressly left undecided in the 1961 decision concerning the effect of the enactment of c. 435.

Statute 1961, c. 435, § 2,[4] amended G. L. c. 40A, § 7A, by

---

provisions of the zoning . . . by-law [D] *existing at the time of said approval.* No amendment to any . . . by-law shall apply to or affect any lot shown on a plan [E] *previously endorsed with the words 'approval under the subdivision control law not required'* or words of similar import, pursuant to . . . [c. 41, § 81P], until a period of three years from the date of such endorsement has elapsed, provided such lot complies with the provisions of the zoning ordinance or by-law [F] *existing at the time of said endorsement,* and provided further, that a city or town may, in the manner prescribed for in this chapter, increase the permitted uses of any lot shown on such a plan to include other uses'' (emphasis supplied). The letters in brackets have been inserted only for convenient reference to the language immediately following such letters.

[4] The relevant language of § 7A as revised by the 1961 statute, read, "When a preliminary plan . . . has been submitted to a planning board . . . the land shown on such preliminary plan and on the definitive plan evolved therefrom, *or [A] in the absence of a preliminary plan, the land shown on a definitive plan submitted under the provisions of the subdivision control law,* shall be governed by [B] *applicable provisions of* the zoning . . . by-law [C] in effect at the time of the submission of the plan first submitted [D] while such plan or plans are being processed under said subdivision control law; and, [E] *if said definitive plan becomes approved, or is disapproved and thereafter amended and duly approved, said provisions of the . . . by-law in effect at the time of the submission of the first submitted plan shall govern the land shown on such approved definitive plan for a period of five years from the date of such approval [F] notwithstanding* any other provision of law; provided that, if a *preliminary plan is submitted,* the definitive plan is

striking out § 7A as it had previously read (see fn. 3). Section 3 of the 1961 act purported to continue in effect certain existing rights with respect to land shown on any plan theretofore submitted or approved.[5]

One important change made in § 7A by c. 435, § 2, is the provision (see fn. 4 at point [A]) that (where there is no preliminary plan) the land shown on a definitive plan shall be governed by the "applicable provisions" (see fn. 4 at point [B]) of the zoning by-law "in effect" (see fn. 4 at point [C]) when the definitive plan was submitted.[6] This is a direct and specific legislative statement, for the first time, that a definitive plan is to be governed by the by-law in effect when the plan is filed while the plan is being "processed" under the subdivision control law (see fn. 4 at point [D]). It is buttressed by the later provision (fn. 4 at point [E]) that, if the definitive plan is later approved, that by-law is to govern the land for five years (now seven years, see St. 1965, c. 366, § 1, the most recent amendment of § 7A). This later provision is to be effective (see fn. 4 at point [F]) "notwithstanding any other provision of law," subject to a proviso not here relevant. It is also significant that c. 435 carefully omitted the requirements found in § 7A, as it read after the 1960 amendment, that the lot comply with the zoning by-law existing at the time of the approval or endorsement of the plan

---

duly submitted within seven months from the date on which the preliminary plan was submitted; and provided further that the land shown thereon is to be developed for residential use" (emphasis supplied). Language added in 1961 has been italicized in this quotation. It will be observed that § 2 of the 1961 statute omitted certain language found in the next preceding form of § 7A (see fn. 3). The letters in brackets in the preceding quotation have been inserted only for convenient reference to the language immediately following such letters.

[5] Section 3 provided, "Nothing in this act contained shall extinguish, limit or abridge the rights of any person with respect to land shown on any plan submitted to, or approved or endorsed by, any planning board prior to the effective date of this act, to use such land as permitted under" G. L. c. 40A, § 7A, "as in effect immediately prior to said effective date."

[6] In context, the term "applicable provisions" (see fn. 4 at point [B]) means those provisions of the by-law relevant to the particular land and plan. Cf. the discussion in the 1961 decision (343 Mass. 1, 4, 6–7) of the term "applicable . . . zoning by-laws" as used in G. L. c. 41, § 81M, where the context of the word "applicable" required a more comprehensive consideration of other sections of c. 41 and c. 40A, especially § 11.

(see fn. 3, at points [C], [D], [E], and [F]). Accordingly, there can be no doubt that approval of a plan filed after the effective date of St. 1961, c. 435, was to be controlled (to the extent indicated in the 1961 amendment) by the zoning by-law in effect at the time of the filing of the definitive plan (or of the filing of the preliminary plan upon which the definitive plan was based, where there was a preliminary plan). See *Ward & Johnson, Inc.* v. *Planning Bd. of Whitman,* 343 Mass. 466, 467. It remains for us to determine how c. 435, § 2, affected definitive plans which had been filed prior to the effective date of c. 435, and which were still on that effective date "being processed under . . . [the] subdivision control law."

Chapter 435 operates prospectively in that it directs planning boards thereafter to approve or disapprove subdivision plans in the light of the zoning by-law in effect at the time of filing the plan rather than the by-law in effect when the planning board makes its decision. No express distinction is made in c. 435 between the application of the chapter (a) to plans thereafter filed and (b) to those theretofore filed. These factors tend to support construing c. 435 as applying equally to both types of plan.

On the other hand, to hold c. 435 applicable to plans theretofore filed and still pending, where there has been a zoning by-law change made before the statute's effective date, would mean that the planning board would be obliged to apply a zoning by-law which had ceased to exist before the planning board acted and before the statute itself became operative. Such a construction would permit one in Doliner's position to avoid the zoning by-law applicable to his plan (under § 7A as it then stood) when he filed his plan and would defeat the purpose of the amended by-law. To hold c. 435 applicable to this plan thus would have retroactive substantive effect upon the positions of Doliner, the town, and Doliner's neighbors as they respectively stood at the time Doliner filed his plan and especially upon the town's interest in enforcing the new by-law, adopted before the plan was filed, and not effective then merely be-

cause it was awaiting the Attorney General's approval and publication.[7]

On balance, we think that c. 435 should not be construed as having this retroactive effect in the absence of explicit language showing that this unusual type of retroactive operation was intended. We recognize, of course, that, until final approval or disapproval of the plan, the Legislature had power reasonably to regulate the exercise of the power of future disapproval. We conclude that it has not purported to do so with respect to plans filed before the effective date of c. 435. See *Building Inspector of Acton* v. *Board of Appeals of Acton,* 348 Mass. 453, 456–457, and cases cited.

It remains for us to consider whether the situation is altered in any respect by St. 1965, c. 366. The only change (apart from irrelevant changes of punctuation) effected by c. 366, § 1, in § 7A, as it existed prior to this 1965 statute (see St. 1965, c. 65), was to alter, from five years to seven years, the period during which, with respect to previously approved plans, the zoning by-law in effect when a plan was filed would govern the land shown in the plan. We do not interpret c. 366, § 2 (which directed that the "provisions of this act shall apply to plans submitted to planning boards prior to its effective date"), as meaning more than that the particular change effected by c. 366, § 1, should so apply. No language in c. 366 is sufficiently explicit to lead us to interpret the statute as intended to apply retroactively in any way the statutory changes in § 7A effected nearly four years earlier by St. 1961, c. 435.

A final decree is to be entered in the Superior Court dismissing the bill as is provided by stipulation of the parties.

*So ordered.*

---

[7] See G. L. c. 40, § 32, as amended through St. 1952, c. 337.