JOSEPH CHIRA & another *vs.* PLANNING BOARD
OF TISBURY & others
(and six companion cases).

Dukes County.    March 13, 1975. — August 20, 1975.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Equity Pleading and Practice,* Subdivision control appeal, Zoning ap-
peal. *Subdivision Control. Zoning,* Amendment of by-law or ordi-
nance, Plan approved under subdivision control law.    .

Where the owners of a tract of land submitted preliminary plans for a
proposed subdivision to a town's planning board prior to the Attor-
ney General's approval of an amendment to the town's zoning by-
law, increasing the permissible minimum lot size, the amendment
was not applicable to the plans under G. L. c. 40A, § 7A. [435-437]
Regulations adopted by a town's planning board pursuant to G. L.
c. 41, §81Q, which required subdividers to give "[d]ue consideration
... to the attractiveness of the street layout in order to obtain the
maximum livability and amenity of the subdivision" and to show
"[d]ue regard ... for all natural features ... which ... will add at-
tractiveness and value to the subdivision" were too vague to inform
subdividers of the standards they must meet and were therefore
unenforceable. [437-439]
A town's planning board was without authority to reject a subdivider's
plan on the ground that the subdivider did not intend to implement
it. [439]
The provision of G. L. c. 40A, § 7A, that plans for a proposed subdi-
vision are governed by the provisions of the zoning by-law in effect
at the time of submission of the plans extended to proceedings be-
fore a town's board of appeals as well as those before the planning
board. [439]
In ruling that a board of appeals exceeded its authority in issuing cer-
tain permits, a judge properly entered decrees modifying the special
permits where the same ultimate result would have been obtained
from a remand to the board of appeals. [439-440]

SEVEN BILLS IN EQUITY filed in the Superior Court on July
24, 1973, July 27, 1973, October 23, 1973, October 24, 1973,
November 9, 1973, November 14, 1973, and December 4,
1973, respectively.

The suits were heard by *Zarrow,* J.

*Douglas A. Randall* for Francis West, Jr., & others (*Duncan Kreamer*, for Planning Board of Tisbury, with him).

*Bernard A. Dwork* for Joseph Chira & another.

*E. Peter Mullane*, Town Counsel, for the Zoning Board of Appeals of Tisbury, submitted a brief.

ARMSTRONG, J.   These seven bills in equity arose from a series of controversies concerning the proposed subdivision of a 107-acre tract of land in Tisbury. Three of them[1] were brought by the owners of the locus (applicants) under G. L. c. 41, § 81BB (as appearing in St. 1957, c. 199, § 2), for the purpose of challenging the actions taken by the Planning Board of Tisbury (planning board) on October 24 (Superior Court No. 1559), November 7 (No. 1560) and November 28 (No. 1562) of 1973 upon alternative subdivision plans submitted by the applicants for approval. In the remaining four bills, brought pursuant to G. L. c. 40A, § 21 (as amended through St. 1972, c. 334), certain abutters seek to overturn a decision of the Board of Appeals of Tisbury (board of appeals) dated June 29, 1973, as revised on July 9 of that year, to grant the applicants a special permit to create a so-called cluster development of the locus (Nos. 1547[2] and 1548[3]), a decision of the board of appeals of October 4, 1973, to grant a second cluster-development permit (Nos. 1557[4] and 1558[5]), and a decision of the same board on the latter date to grant a special permit for the stabling of horses on the locus (No. 1557). A judge of the Superior  Court  entered  decrees  whereby  (a)  the  cases

---

[1] All entitled as captioned above.

[2] Francis West, Jr., & others *vs.* Board of Appeals of Tisbury & another.

[3] Edward W. Smith, III, & others *vs.* Board of Appeals of Tisbury & others.

[4] Edward W. Smith, III, & others *vs.* Board of Appeals of Tisbury & others.

[5] Francis West, Jr., & others *vs.* Board of Appeals of Tisbury & another.

against the planning board were remanded for further pro-
ceedings in accordance with certain rulings of law and (b)
the decisions of the board of appeals, subject to a modifica-
tion to be described hereafter, were upheld. The planning
board appeals from the decrees entered in the cases against
it, and abutters, some of whom intervened as parties defend-
ant in those cases, appeal from the decrees in all seven
cases.

## THE PLANNING BOARD CASES

1. The decrees appealed from in the three cases against
the planning board ordered those cases remanded to the
planning board for further consideration. For the reasons
stated in *Roberts-Haverhill Associates* v. *City Council of
Haverhill,* 2 Mass. App. Ct. 715, 719-720 (1974), those de-
crees are interlocutory, rather than final, and the appeals
therefrom must be dismissed. *Giacobbe* v. *First Coolidge
Corp.* 367 Mass. 309, 312-313 (1975). *Foreign Auto Import,
Inc.* v. *Renault Northeast, Inc.* 367 Mass. 464, 466-471
(1975). "However, since the appellants' procedural error
may have been caused in part by confusion regarding the
changes in practice occasioned by the transition to the new
laws and rules on July 1, 1974, and in view of the fact that
the briefs on both sides argue the merits of the appeal[s]"
(*Id.* at 471) and because resolution at this time of the
issues presented by the appeals will simplify the complex
litigation concerning the locus and expedite future pro-
ceedings, we proceed to consider the issues raised by the
appeals.

2. The principal issue in the cases against the planning
board arises from an amendment to the town's zoning by-
law during the pendency of the proceedings on the subdivi-
sion plans submitted by the applicants. Before its amend-
ment the by-law permitted lots of 25,000 square feet in the
zoning district in which the locus is situated. The amend-
ment prescribed a minimum lot size of 50,000 square feet.
The applicants' subdivision plans were in compliance with
the 25,000 square-foot provision of the unamended by-law

but not with the 50,000 square-foot minimum under the amended version of the by-law.

The relevant sequence of events, all of which occurred in 1973, was as follows. The applicants filed a preliminary plan whereby the locus was to be subdivided in a conventional fashion (the grid plan) on February 12 and a revised preliminary plan of the same type on March 12. On April 2 the amendment to the zoning by-law was adopted by the town meeting and was thereafter duly submitted to the Attorney General for approval in accordance with G. L. c. 40, § 32. On May 11 the applicants filed a different preliminary plan, this one calling for the subdivision of the locus as a "cluster development", defined by the applicable by-law as "a division of land into lots used or available for use as building sites where said lots are clustered together into one or more groups separated from adjacent property and other groups of lots by intervening common land" (the cluster plan). The applicants filed their definitive grid plan on August 27 and their definitive cluster plan on September 13. Meanwhile, the Attorney General approved the amendment to the zoning by-law on August 7 and it was last published, as required by G. L. c. 40, § 32, on August 28. On October 24 the planning board approved the definitive grid plan, but purported to make its approval subject to the condition that a "court of competent jurisdiction determine that the subdivision does not violate the density [i.e., lot-size] requirements of the Tisbury Zoning By-Laws applicable thereto." On November 7 the planning board disapproved the definitive cluster plan by reason of its belief "that the plan is not in conformity with density requirements of the zoning by-law approved by the Town of Tisbury on April 2, 1973." On November 28 the planning board voted to rescind its approval of the definitive grid plan and to disapprove that plan for several reasons, including the one given for its disapproval of the cluster plan.

The trial judge ruled that both the grid and cluster plans were governed by the zoning by-law as in effect before its 1973 amendment, and hence that the planning board had exceeded its authority in disapproving the plans on the

strength of the increased lot-size minimum contained in the amended by-law.[6] He was correct in so ruling.

Under G. L. c. 40A, § 7A (as amended through St. 1965, c. 366, § 1), both definitive plans are "governed by applicable provisions of the zoning ... by-law *in effect* at the time of submission ... [of the respective preliminary plans] while such ... plans are being processed" [emphasis supplied], subject to certain conditions not here material. Under G. L. c. 40, § 32, the amended by-law did not take effect until its approval by the Attorney General and publication in August, 1973. *Doliner* v. *Planning Bd. of Millis,* 343 Mass. 1, 6 (1961). That was well after the applicants' preliminary grid and cluster plans had been filed. The unamended by-law was therefore the one "in effect" for purposes of § 7A at the time the preliminary plans were filed and the one to which the definitive plans were subject.

The contrary result in *Doliner* v. *Planning Bd. of Millis, supra,* upon which the appellants place their primary reliance, was reached on the basis of an earlier and materially different version of § 7A. See *Id.* at 7-8. The subsequent changes in § 7A effected by St. 1959, c. 221, and St. 1961, c. 435, § 2, which are fully discussed in *Doliner* v. *Planning Bd. of Millis,* 349 Mass. 691, 695-698 (1965), make it clear, we think, that the by-law amendment relied upon by the planning board was not applicable to either of the definitive plans before it.

3. The planning board's purported rescission of its approval of the grid plan and its disapproval thereof in November, 1973, were based on the further ground that the applicants had failed to comply with certain of the rules and regulations adopted by the planning board under G. L. c. 41, § 81Q. The judge found that most of the applicants' supposed violations of those rules and regulations had no

---

[6] The judge also ruled that the planning board had exceeded its authority in imposing the condition quoted above when it approved the grid plan in October, and that the planning board had failed to comply with statutory procedures when it purported to rescind that approval in November. The propriety of those rulings has not been questioned.

basis in fact, and that finding is not contested by the appellants. In addition, however, the judge ruled that two provisions of the rules and regulations which the planning board appears to have relied upon were invalid, and the appellants argue that that ruling was erroneous.

The first of the provisions at issue, which appears under the heading "Streets" and the subheading "Location and Alignment", reads: "Due consideration shall also be given by the subdivider to the attractiveness of the street layout in order to obtain the maximum livability and amenity of the subdivision." The other one, captioned "Protection of Natural Features", states: "Due regard shall be shown for all natural features, such as large trees, water courses, scenic points, historic spots, and similar community assets, which, if preserved, will add attractiveness and value to the subdivision." The judge concluded that the planning board was without statutory power to adopt such regulations.

We need not decide whether regulations dealing with aesthetic considerations and environmental protection are permissible under the Subdivision Control Law, as we are of the opinion that the provisions quoted above are not drafted in such a way as to be enforceable. Whether a proposed subdivision meets such standards as "attractiveness of the street layout" and "maximum livability and amenity", and whether the preservation of a particular natural feature "will add attractiveness and value to the subdivision", and what constitutes "[d]ue consideration" and "[d]ue regard", are essentially matters of opinion — presumably the collective opinion of the members of the planning board at the time a particular plan is being evaluated. Assuming the possibility of setting forth clear and objective standards as to how such an opinion is to be arrived at, we perceive no attempt to formulate such standards here. The regulations in question therefore fail to fulfill the requirement of apprising owners "in advance what is or may be required of them and what standards and procedures will be applied to them." *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. 329, 334 (1962). See also

*Pieper* v. *Planning Bd. of Southborough,* 340 Mass. 157, 163-164 (1959).

4. A further argument advanced by the appellants — that the grid plan was properly rejected because the applicants never intended to implement it — is without merit. Even if a finding of such lack of intention were justified (and we do not say that it is), that would be no ground for disapproving the plan. Our attention is directed to nothing in the Subdivision Control Law preventing an owner from engaging in the fruitless exercise of filing subdivision plans which he intends never to utilize.

## THE BOARD OF APPEALS CASES

1. The appellants' attack on the decisions of the board of appeals to grant the applicants special permits to create a cluster development on the locus (such a permit being a condition precedent to the approval of a subdivision plan involving such a development under the applicable by-law) rests largely on the contention that the lot-size requirement of the amended zoning by-law was controlling. That contention has been rejected above, and it is clear that the protection afforded by § 7A extends to proceedings before the board of appeals as well as those before the planning board. See *Nyquist* v. *Board of Appeals of Acton,* 359 Mass. 462, 465-466 (1971); *Green* v. *Board of Appeal of Norwood,* 2 Mass. App. Ct. 393, 396-397 (1974).

2. The appellants also assert error in the form of the decrees entered in the cases against the board of appeals. The judge, having ruled that the board of appeals exceeded its authority insofar as it allowed attached (as well as detached) building on the locus,[7] entered decrees modifying the special permits accordingly. The appellants contend that the judge thereby usurped the statutory powers of the board of appeals in the issuance of special permits, and

---

[7] We do not consider the merits of that ruling, as it was adverse only to the applicants and the board of appeals and they have not appealed. *McAleer* v. *Board of Appeals of Barnstable,* 361 Mass. 317, 320 (1972).

that the law required him instead to annul the decisions and remand the cases to the board of appeals for further proceedings. We disagree. Where, as here, a board has granted a permit in a form that is overbroad, and it is clear from the record that exactly the same ultimate result would occur from a remand as that effected by the decree,[8] no useful purpose would be served by a remand. See *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 559 (1954). *Tambone* v. *Board of Appeals of Stoneham,* 348 Mass. 359, 364 (1965). We are of the opinion that in the circumstances of these cases the judge acted within his power under G. L. c. 40A, § 21, to "make such other decree as justice and equity may require."

3. Other arguments directed at the decision of October 4, 1973, to grant the cluster-development permit are not considered, as they are outside the scope of a stipulation as to the issues made by the parties at the trial, on the basis of which the case was tried to its conclusion. *Burwick* v. *Zoning Bd. of Appeals of Worcester,* 1 Mass. App. Ct. 739, 745-746 (1974).

4. The appellants' remaining contentions relate exclusively to the board of appeals' decision of June 29, 1973, as revised on July 7 of that year. Both the applicants and the board of appeals concede that a decision upholding the special permits granted on October 4, 1973, will render the earlier special permits unnecessary. For that reason those permits will be annulled, and the issues peculiar to them need not be discussed. Compare *McLaughlin* v. *Board of Appeals of Harwich,* 359 Mass. 416, 419 (1971).

5. No argument having been made as to the propriety of the decision of October 4, 1973, whereby a stable permit was to be issued to the applicants, or the propriety of the decree with regard to that decision, all issues relative thereto are deemed waived. Mass. R.A.P. 16(a) (4), as amended, 367 Mass. 919 (1975).

---

[8] The board of appeals filed a brief in which it questioned the judge's underlying ruling but, given that ruling, supported the judge's action in modifying the board of appeals' decisions without remand.

### DISPOSITION

The decrees in Nos. 1557 and 1558 are affirmed. The decrees in Nos. 1547 and 1548 are reversed, not on the merits, but on the ground of mootness, and judgments annulling the special permits appealed from in those cases are to be entered. The appeals in Nos. 1559, 1560 and 1562 are dismissed.

*So ordered.*