BOARD OF SELECTMEN OF AYER *vs.* PLANNING BOARD
OF AYER & others
(and two companion cases[1]).

Middlesex.    February 11, 1975. — October 23, 1975.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Subdivision Control. Zoning,* Plan approved under subdivision control
law. *Equity Pleading and Practice,* Subdivision control appeal.

A planning board's regulation which provided that not more than one
dwelling could be erected on any lot in a subdivision without the
consent of the board did not limit the use of a lot to a single-family
dwelling where there was no zoning by-law prohibiting a multi-
family dwelling. [546-548]
One who challenges a planning board's approval of a subdivision plan
has the burden of proof. [548-549]

TWO BILLS IN EQUITY filed in the Superior Court on Au-
gust 8, 1972, and August 9, 1972, respectively.

The suits were heard by *Bennett,* J.

BILL IN EQUITY filed in the Superior Court on December
28, 1972.

The suit was heard by *Zarrow,* J.

*Harry H. Caviston & Thomas E. Lilly,* Town Counsel,
for the Board of Selectmen of Ayer & others.

*J. Owen Todd (James C. Donnelly, Jr.,* with him) for
Breakthrough Corp. & another.

*Robert U. Holden* for the Planning Board of Ayer.

ARMSTRONG, J.    These three cases, two of which were
consolidated for trial, involve attempts by two corporate
developers to subdivide two parcels of land in the town
of Ayer and to build multiple-unit residential buildings

[1] Breakthrough Corp. & another *vs.* Board of Selectmen of Ayer &
others, and Zoning Enforcing Officer of Ayer *vs.* Breakthrough Corp.
& another.

thereon. The developers filed preliminary subdivision plans on January 20, 1972, and March 3, 1972, which the planning board "voted to accept" on April 18, 1972. The definitive plans which evolved from the preliminary plans were both filed on June 21, 1972. The planning board originally disapproved the definitive plans on August 16, 1972, for stated reasons but thereafter approved them on December 12, 1972. See G. L. c. 41, § 81U. The selectmen appealed from those approvals to the Superior Court under G. L. c. 41, § 81BB.

During the winter and spring of 1972 the town of Ayer was in the process of adopting an original zoning by-law. That by-law was approved by the Attorney General on April 11, 1972, and was last advertised on May 25, 1972. See G. L. c. 40, § 32. The by-law zoned the two parcels in question for single family residential use and required a building permit as a condition precedent to any construction.

On June 18, 1972, the developers commenced construction of an air-filled, balloon-wall structure apparently intended to be a temporary shelter for employees, equipment, and supplies to be used in the construction of the proposed multiple-dwelling-unit buildings. On June 22, 1972, the zoning enforcing officer under the new zoning by-law posted stop-work orders at the site for the stated reason that no building permit had been issued. There ensued cross actions by the developers and the zoning enforcing officer for declaratory and injunctive relief.

The selectmen's appeal under § 81BB and the cross actions are all here on appeals from judgments and a final decree favorable to the developers and the planning board and adverse to the selectmen and the zoning enforcing officer.

In the cross actions, the Superior Court correctly ruled that the subdivisions were exempt under G. L. c. 40A, § 7A, from the requirements of the zoning by-law, provided that the approvals of the subdivisions should be sustained in the § 81BB appeal. See *Chira* v. *Board of Appeals of Tisbury, ante,* 433, 436-437 (1975). The sole contention now

pressed in the cross actions is that the Superior Court erred in ruling that construction of a multiple-dwelling-unit building on each lot was permissible notwithstanding a planning board regulation which read:

> "Not more than one dwelling designed or available for use for dwelling purpose shall be erected or placed or converted to use as such on any lot in a subdivision, or elsewhere in the town of Ayer, without the consent of the [Planning] Board. Such consent may be conditional upon the providing of adequate ways furnishing access to each site for such building, in the manner as otherwise required for lots within a subdivision."

The language of this regulation is derived from G. L. c. 41, § 81Q, which reads in part:

> "... Except in so far as it may require compliance with the requirements of existing zoning ordinances or by-laws, no rule or regulation shall relate to the size, shape, width, frontage or use of lots within a subdivision, or to the buildings which may be constructed thereon.... The rules and regulations may, however, provide that not more than one building designed or available for use for dwelling purposes shall be erected or placed or converted to use as such on any lot in a subdivision, or elsewhere in the city or town, without the consent of the planning board, and that such consent may be conditional upon the providing of adequate ways furnishing access to each site for such building, in the same manner as otherwise required for lots within a subdivision...."

The ruling of the Superior Court was clearly correct. Through the type of regulation authorized by § 81Q, a planning board may limit the number of buildings which might be erected on a particular lot, but it may not limit the use of the lot to a single-family dwelling where there is no zoning by-law which prohibits a multi-family dwell-

ing. *McCarthy* v. *Board of Appeals of Ashland,* 354 Mass. 660, 663 (1968).

Nor have the appellants shown that the Superior Court erred in sustaining the planning board's approval of the subdivision plans. Their arguments to the contrary appear to raise issues not raised before the trial court, which cannot be done of right. *Burwick* v. *Zoning Bd. of Appeals of Worcester,* 1 Mass. App. Ct. 739, 745-746 (1974). The appellants contend that the approval cannot stand because the judge's findings fail to show compliance with each regulation of the planning board. Passing the fact that the judge appears to have made a general finding to that effect, there is nothing in the cases upon which the appellants rely, e.g. *Rettig* v. *Planning Bd. of Rowley,* 332 Mass. 476 (1955) and *Kuklinska* v. *Planning Bd. of Wakefield,* 357 Mass. 123 (1970), which required the judge to make findings on issues not raised by the appellants in their pleadings and at trial.

The burden was on the appellants to show that the planning board acted improperly in approving the subdivision plans. Unlike a grant of a variance from a zoning by-law, to which no one has a legal right (*Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 557, 559 [1954]), one is entitled to have a definitive subdivision plan approved unless it is shown to be in conflict with recommendations of the board of health (as to which no contention is here raised) or the reasonable rules and regulations of the planning board. General Laws, c. 41, § 81U. *Baker* v. *Planning Bd. of Framingham,* 353 Mass. 141, 144 (1967), and cases cited. Unlike the case of a variance or a special permit, which can only arise from an affirmative grant, a failure to take any action on an application for approval of a definitive subdivision plan results in approval thereof. General Laws, c. 41, § 81U. *Kay-Vee Realty Co. Inc.* v. *Town Clerk of Ludlow,* 355 Mass. 165 (1969). The entire scheme of the Subdivision Control Law indicates to us that the burden of adducing proof is on those who contend that a subdivision plan was improperly approved. Contrast *Dion* v. *Board of Appeals of Waltham,* 344 Mass.

547, 555-556 (1962). That burden was not sustained by the appellants in this case.

In the cross actions the judgments are affirmed. In the selectmen's appeal under § 81BB the final decree is affirmed.

*So ordered.*