LINDA M. STRAND & others *vs*. PLANNING BOARD OF SUDBURY & others.

Middlesex.    November 9, 1976. — January 6, 1977.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Subdivision Control,* Appeal, Judgment.  *Practice, Civil,* Subdivision control appeal, Judgment.

In an action pursuant to G. L. c. 41, § 81BB, challenging a planning board's decision to approve a proposed subdivision subject to certain conditions, a Superior Court judge exceeded his authority in approving the plan after ordering certain additional modifications of it without remanding the case to the planning board. [19-24]

BILL IN EQUITY filed in the Superior Court on June 24, 1971.

The case was heard by *Adams*, J.

*Francis C. Newton, Jr.*, for the plaintiffs.

*Gerald S. Cournoyer, Jr.*, for Walter A. Beckett & another, trustees.

*David L. Turner*, Town Counsel, for the Planning Board of Sudbury, submitted a brief.

BROWN, J.    The plaintiffs, pursuant to G. L. c. 41, § 81BB, filed a bill in equity in the Superior Court in which they appealed from a decision of the planning board of Sudbury (board) which approved a proposed subdivision. Because of procedural defects in the initial public hearing, the case was remanded to the board, which after a valid hearing (held on January 15, 1973) approved a

plan subject to four conditions. A Superior Court judge modified the fourth condition of the board's approval and, as modified, affirmed the decision of the board.

The plaintiffs, abutters and an owner adjacent to abutters of the proposed subdivision, appeal to this court on the grounds (a) that the board acted beyond its authority in giving its approval to the plan and (b) that the Superior Court judge acted beyond his authority in approving the plan after ordering certain additional modifications of it. The plaintiffs also argue that the drainage provisions, in both the plan initially approved by the board and in the plan as modified (and approved) by the Superior Court judge, do not adequately protect the plaintiffs' property from potential flooding.

The Superior Court judge, after hearing all the evidence, made findings of fact, as required by G. L. c. 41, § 81BB. We summarize the judge's findings. The proposed subdivision contains approximately twenty-six acres on an elevated tract adjacent to the Sudbury River. The land contained in the subdivision is part of a larger watershed area. Water flows from the subdivision onto the lands of the plaintiffs.

Three successive definitive subdivision plans, each covering all the land in the development, were submitted to the board by the developer. The plans contained numerous proposals for setting up drainage systems. As part of the third definitive plan the developer proposed for the westerly portion of the subdivision a system of catchbasins for collecting water and passing it onto the lands of persons (one Ridolfi and one Johnson) from whom easements for this purpose had been obtained.

The judge found that effects of the proposed drainage system for the westerly portion of the subdivision would be to "cause the surface water to move faster and in a shorter period of time onto [the] land[s] of Ridolfi and Johnson, but through the use of rip rap this discharge will be adequately slowed so that there should be no scouring or erosion on [the] land of [the plaintiff] Strand." "The system of drainage proposed for the easterly portion of the

subdivision may so channelize the surface water that it will discharge upon [the plaintiff] Wolbach['s] land in a scouring force causing erosion." The judge then "ruled" that the fourth condition of the board's decision, containing deed restrictions on lots 4 through 7 "to ensure no interruption or change of water course over these lots by the owners, their heirs or assigns," might not be adequate to protect the neighboring lands from flooding. The judge said in this connection that the "[c]ourt cannot and does not find that there will be flooding or ... erosion upon the [plaintiffs'] property ... nor can it find that there will not be [flooding and erosion]." Accordingly, the judge ruled that "justice and equity require" that the deed restrictions set forth in condition four of the board's decision as to the third definitive plan "be enlarged" so as to secure better drainage of the development.[1]

Subsequent to the filing of his "Findings, Rulings and Order for Decree," the judge received a plan in May, 1974, from the developer, replete with supporting data, setting out a new drainage proposal for the easterly portion of the subdivision. The new plan contained many suggested changes, including a proposal for a dam.[2]

The town's engineering department and the planning board approved the May, 1974, plan, apparently at the initiative of the judge. (Board approval was not preceded by another public hearing, and there is no indication of any prior consultation with the town's board of health.) He ordered that a judgment be prepared affirming the

---

[1] The parties were directed to meet, confer and attempt in good faith to agree upon an appropriate modification; if the parties could not agree, they were directed to submit their respective proposals to the court within thirty days of the entry of the order.

[2] The engineering firm which had prepared the report on the new drainage proposal which became the basis of the May, 1974, plan indicated that the dam would cause more water to be retained and the discharge spread over a greater period of time. The engineering report further indicated that the water would be discharged with an "undesirable" increase in velocity. The increased velocity of the run-off was to be reduced by field stones.

board's decision, subject to two conditions (affecting the easterly portion) in addition to those already imposed by the board. The first condition was that the modification of the drainage system contained in the latest proposal submitted to him be completed. The second condition set out the literal terms of a form of covenant which the judge determined to be suitable in the circumstances. The plaintiffs have appealed from a final judgment that incorporated the conditions mentioned above.

The plaintiffs contend that the judge usurped the board's statutory functions when he failed to remand the case to the board so that it could pass upon the proposed subdivision changes (following a public hearing) and when he himself made extensive modifications in the plan prior to his approval of it.

The judge based his authority to condition his approval of the plan on his understanding of the provisions of G. L. c. 41, § 81BB. That section provides that "[t]he court shall hear all pertinent evidence and determine the facts, and upon the facts so determined, shall annul such decision if found to exceed the authority of such board, or make such other decree as *justice and equity may require*" (emphasis supplied).

In *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555 (1954), a similar provision of the zoning law contained in St. 1933, c. 269, § 1 (see now G. L. c. 40A, § 17, as appearing in St. 1975, c. 808, § 3), was interpreted by the Supreme Judicial Court. The prior interpretations given to the "justice and equity" provision of the zoning law are relevant in construing the similar provisions of the Subdivision Control Law. *Rettig* v. *Planning Bd. of Rowley,* 332 Mass. 476, 478-479 (1955). In *Pendergast,* the court held that the judge's power to issue such decrees as "justice and equity may require" did not give him carte blanche to substitute his judgment for that of the zoning board of appeals. 331 Mass. at 558-559. The opinion added that the statutory language should be construed to confine "the court to its usual and proper function of applying established law to established facts. It does not permit the

court to invade the field of administrative discretion." *Id.* at 559.

In *Chira* v. *Planning Bd. of Tisbury,* 3 Mass. App. Ct. 433 (1975), we interpreted G. L. c. 40A, § 21, as appearing in St. 1973, c. 1114, § 4 (see now G. L. c. 40A, § 17, as appearing in St. 1975, c. 808, § 3), to permit a Superior Court judge to modify a special permit granted by a board of appeals. In *Chira* we held that § 21 gave the court the power to cut down the scope of a special permit that was overbroad when "it is clear from the record that exactly the same ultimate result would occur from a remand as that effected by the decree, [and] no useful purpose would be served by a remand" (footnote omitted). 3 Mass. App. Ct. at 440. Conversely, in *Chira* we approved the judge's remand to the planning board of three cases in which that board had refused to approve certain plans because of its mistaken belief that the plans must comply with an amendment to the zoning by-law. One of the plans had initially been approved by the board, but the board had subsequently reversed itself because of its belief that the amendment was applicable to the plan and for other reasons. *Id.* at 436-439. Even as to that plan, after the judge had determined that the board's belief as to the applicability of the amendment and the other grounds for rescinding its approval were erroneous, he did not approve the plan but remanded it to the board for its further consideration. *Id.* at 434-435.

An examination of these and other cases decided under what is now G. L. c. 40A, § 17 (e.g., *Roberts-Haverhill Associates* v. *City Council of Haverhill,* 2 Mass. App. Ct. 715, 717-719 [1974]), reveals that the judge's authority under G. L. c. 41, § 81BB, to fashion judgments that will do justice and equity is very limited. That section does not give him the power to order modifications[3] of a plan as condi-

---

[3] In *Chira,* the judge's power to "modify" the plan was limited to reducing its scope for legal reasons. No addition to the plan approved by the zoning board of appeals was made by the judge.

tions of his approval of the plan.[4] Any change of this sort should be analyzed and approved by a board of health and by a planning board, both of which are better equipped than a court to analyze the relevant data. See *Caruso* v. *Pastan,* 1 Mass. App. Ct. 28, 30-31, n. 4 (1973). See generally Jaffe, Judicial Control of Administrative Action, c. 14, § X (1965).

One problem with permitting a judge to do what was done in the present case is that many statutory requirements are not complied with. In the instant case, after the judge concluded that modification of the plan originally approved by the board was in order, he secured the board's approval of the modified plan. The board, however, did not consider that plan at a public hearing, as required by statute. G. L. c. 41, §§ 81W and 81T. *Pieper* v. *Planning Bd. of Southborough,* 340 Mass. 157, 160-161 (1959). See *Doliner* v. *Planning Bd. of Millis,* 343 Mass. 1, 5, 8 (1961). It is only after the statutory hearing of which all interested persons have notice and in which they can participate (G. L. c. 41, § 81T), that a proper evaluation of a proposed plan can be obtained. Further, as a result of the judge's action in this case the local board of health was prevented from considering the changes in the proposed plan, making its own analysis of any health problems which might exist and submitting the recommendations required by G. L. c. 41, § 81U. See *United Reis Homes, Inc.* v. *Planning Bd. of Natick,* 359 Mass. 621, 622-623 (1971).

The judge's proper role was to determine whether, on the facts found by him, the board had exceeded its authority in approving the plan aired at the public hearing. In the course of that process, he should have determined whether that plan conformed to the rules and regulations

---

[4] See Adams, Judicial Review Under Subdivision Control Law, 61 Mass. L.Q. 70 (1976), listing various types of possible judgments which the Superior Court has the power to issue in a case of this type. Nowhere is there mention made of the type of relief which the judge fashioned in the instant case.

of the planning board and to the recommendations of the board of health. *Canter* v. *Planning Bd. of Westborough,* 4 Mass. App. Ct. 306, 308-309 (1976). If such rules and regulations had been complied with and the plan comported with the recommendations of the board of health, he should have determined that the board did not exceed its authority in approving the plan. See *Selectmen of Ayer* v. *Planning Bd. of Ayer,* 3 Mass. App. Ct. 545, 548 (1975). The judge should not have arrogated to himself the functions of the board of health or those of the planning board, or attempted to improve upon the work of either board. All actions taken by the judge in modifying the plan are annulled.

The judgment is reversed, and the case is remanded to the Superior Court. If the planning board wishes to proceed with respect to a plan containing conditions other than those originally approved by it on January 15, 1973, the case is to be remanded to the board for a further public hearing following a new recommendation by the board of health. Otherwise, the court, after a new hearing conducted by it, is to proceed to determine the validity of the planning board's original decision in accordance with the principles stated in this opinion. Costs of appeal are not to be awarded to any party.

*So ordered.*