Wexler, James H., J.
This is an appeal pursuant to G.L.c. 41, §81BB, the Town of Holden Planning Board’s (hereinafter “the Board”), decision disapproving C.B. Blair’s (hereinafter “the plaintiff’) Definite Subdivision Plan application. The Board disapproved the plaintiffs subdivision plan for Stoney Brook Estates, a 75-lot subdivision in Holden, Massachusetts.
A trial was held on May 10, 2005. Based upon the stipulations of the parties and all the credible evidence and the reasonable inferences that may be based on that evidence, the court makes the following findings of fact and rulings of law.

FINDINGS OF FACT

The plaintiff, C.B. Blair Development Corporation owns approximately sixty-two (62) acres of land in Holden, Massachusetts. The Town of Holden Planning Board was established pursuant to G.L.c. 41, §81A. The individually named defendants are duly elected members of the Board.
On or about May 16, 2000, the plaintiff submitted to the Holden Planning Board a Definitive Subdivision Plan along with the requisite Application Form C and the filing fee. At all times relevant to the case, there were in effect Subdivision Control Regulations for the Town of Holden, Massachusetts (“the Regulations”[2]).
The plan, application and fee were duly accepted for submission by the Town Clerk. The plan comprises of land situated on Reservoir Street in the Town of Holden. Pursuant to G.L.c. 41, §8 IT, the plaintiff served written notice of the filing of said plan upon the Town of Holden.
The subdivision plan proposed 75 residential lots on which single-family homes were to be built. According to the plan, all lots were to be serviced by public sewer and public water facilities.
Pursuant to G.L.c. 41. §8 IT, a public hearing for the subdivision application was scheduled and notice of said hearing was published. The public hearing was conducted on August 22, 2000. Prior to the hearing, the plaintiff had supplemented the application pursuant to discussions at the prior hearing. After presentation by the plaintiff and a period of questions and answers, the hearing was closed. Upon motion made and seconded, the Board voted to disapprove the subdivision.
The Board’s Decision to Disapprove the Definite Subdivision Plan for Stoney Brook Estates, dated August 22, 2000, enumerated two grounds for disapproval. The Board found, as its first ground for refusal, that the plaintiff:
did not present a design for the sanitary sewer system that substantially met the regulations established for such a system by the Town of Holden and the Department of Public Works. A letter prepared by Alan R. Berg, P.E., Director, Town of Holden Department of Public Works, dated July 21, 2000, which refers to the specific Subdivision Control Regulations, is incorporated herein by reference.
As a second ground for disapproval, the Board held that:
the developer created reserve strips at both entrance roads which prevented adjacent properties from having access to the subdivision roadway.
*645 Therefore, the plan as submitted does not comply with Section VA.1.F. of the Town of Holden Subdivision Control Regulations prohibiting the establishment reserve [sic] strips not in the public interest.

RULINGS OF LAW

The plaintiff has the burden in this appeal to show that the Board acted improperly in disapproving the subdivision plan. Board of Selectman of Ayer v. Planning Board of Ayer, 3 Mass.App.Ct. 545, 548 (1975). The appeal of a subdivision decision under G.L.c. 6, §8 IBB, is tried de novo and the court, based upon the evidence presented, must determine the validity of the Board’s decision. Rettig v. Planning Board of Rowley, 332 Mass. 476, 479 (1955). The court may not substitute its judgment for that of the Board, but must determine on the facts found by the court whether the Board exceeded its authority. In making this determination, the court must determine whether the Subdivision Control Regulations are constitutionally valid and whether the Board exceeded its authority when it rejected the plan for not conforming with these Regulations. Strand v. The Planning Bd. of Sudbury, 5 Mass.App.Ct. 18, 23-24 (1977).

A. The Subdivision Control Law

Town planning boards are governed by the Subdivision Control Law, G.L.c. 41, §§81K-81GG, which was enacted to protect the safety, convenience, and welfare of the inhabitants of the city or town. G.L.c. 41, §81Q, provides that the board’s rules and regulations:
shall set forth the requirements of the board with respect to ... the installation of municipal services [in the subdivision] ... to carry out the purposes of the subdivision control law as set forth in Section 81M.
Section 81M indicates that the Subdivision Control Law was enacted to protect the citizens of the town accepting its provision, and that the power of the board shall be exercised with due regard “for securing adequate provision for water, sewerage, drainage . . . and other requirements where necessary in a subdivision . . .”
Every planning board must adopt rules and regulations relative to subdivision control under G.L.c. 41, §81Q, so long as they are not inconsistent with the Subdivision Control Law or with any other provision of a statute or of any valid ordinance or by-law of the town. See Lyman v. Planning Bd. of Winchester, 352 Mass. 209, 212 (1967). The Supreme Judicial Court has held that a board may disapprove a definitive subdivision plan on the basis of a zoning violation even though its rules and regulations did not specifically require compliance with the town’s zoning by-law. Beale v. Planning Bd. of Rockland, 423 Mass. 690 (1976). Aboard may not, however, deny a subdivision plan by placing requirements in excess of those contained in the zoning by-laws. Striar v. The Planning Bd. of Dedham, 1996 WL 88449 (Mass.Super.Ct. 1996).
Section 81Q embodies two general mandates directed at planning boards: (1) rules and regulations dealing with the size, form, contents, style and number of copies of plans and the procedure for the submission and approval... and (2) the rules and regulations of the planning board shall set forth requirements in furtherance of the purposes of Section 81M with respect to the location, construction, width and grades of the proposed ways shown on a plan and the installation of municipal services therein. The effect of these provisions is to require a planning board to adopt reasonable regulations designed to carry out the purposes of the Subdivision Control Law. See G.L.c. 41, §§81M, 81Q; K. Honvanian at Taunton, Inc. v. Planning Bd. of Taunton, 32 Mass.App.Ct. 480, 484 (1992).
Finally, the rules and regulations of the planning board shall not require, and no planning board shall impose, as a condition for the approval of a plan that any of the land within the subdivision be dedicated to public use or conveyed to the Commonwealth or the town in which the subdivision is located, or for any other public purpose, without just compensation. See G.L.c. 41, §81Q; Young v. Planning Bd of Chilmark, 402 Mass. 841, 845 (1988).

A. Denial of a Subdivision Plan

It is the intent of the Subdivision Control Law that any definitive plan filed with the planning board shall be approved if the plan conforms to the recommendation of the board of health and to the reasonable rules and regulations of the planning board. G.L.c. 41, §81M; see Bd. of Selectman of Ayer, 3 Mass.App.Ct. at 548 (“[0]ne is entitled to have a definitive subdivision plan approved unless it is shown to be in conflict with recommendations of the board of health ... or the reasonable rules and regulations of the planning board”).
In disapproving a subdivision plan, the board must point to “particular board regulations” that the submitted plan allegedly violates and make “definite suggestions for amendment of the plan” so that it may comply with the regulations. MP Corp. v. Planning Bd. of Leominster, 27 Mass.App.Ct. 812, 820-21 (1989). The disapproval of a plan must come from either the powers given to the board of health, the rules and regulations of the planning board, zoning by-laws or other applicable ordinances. A planning board may not exercise its authority to disapprove a plan on the grounds that the best interest of the town or the public interest would be served by its disapproval. See Baker v. Planning Bd of Framingham, 353 Mass. 141 (1967).
Additionally, the planning board may require the applicant to inquire with other municipal agencies about the contents of the plan. See Loring Hills Developers Trust v. Planning Bd of Salem, 374 Mass. 343 (1978). These agencies may then make recommendations to the planning board. However, regardless of any recommendations it receives, a planning board may only disapprove a plan if it does not comply with the recommendation of board of health or the board’s rules and regulations. G.L.c. 41, §81M.

*646
B. The Subdivision Control Regulations and By-laws of the Town of Holden

The Board asserts that plaintiffs plan was properly denied because it does not conform with the Subdivision Control Regulations and/or By-laws of the Town of Holden. Specifically, the Board held that the plan failed to establish a sewer system that substantially meets the regulations prescribing sewer systems, Item 31 of Chapter 9.5-4 of the Rules and Regulations Relating to the Construction and Use of Particular Sewers for the Town of Holden. Further, the Board found that the plan created reserve strips which violates Section V.A.l.F. of the Town of Holden Subdivision Control Regulations. Section V.A.l.F. states:
Reserve strips prohibiting the access to streets or adjoining property shall not be permitted, except where, in the opinion of the Board, such strips shall be in the public interest.
1. The Board improperly rejected the subdivision plan on grounds that it violated Item 31 of Chapter 9.5-4 of the Regulations because Item 31 of Chapter 9.5-4 is unconstitutionally vague.
Rules and regulations are to be specific enough for the applicant to know in advance what is or may be required of him and what standards and procedures will be applied to him. Castle Bates, Inc. v. Planning Board of Medfleld, 344 Mass. 329, 334 (1962). Subdivision regulations must be comprehensive, reasonably definite and carefully drafted to ensure “that a prospective subdivider will know in advance in eveiy case what will be required of him in the way of street construction and public utilities.” Castle Estates, 344 Mass, at 331.
The court’s review is confined to reasons for disapproval of the subdivision stated in the Board’s Decision. Canter v. Planning Bd. of Westborough, 4 Mass.App.Ct. 306, 307 (1976). In the Decision, the Board only cites to the plan’s lack of a “design for a sanitaiy sewer system that substantially met the regulations established for such a [sanitaiy sewer) system” and refers to an incorporated letter written from Alan Berg, the Director of the Department of Public Works (DPW), as its first reason for denial. As the Board failed to articulate what “regulations establish such a system” in its Decision, the court had to examine die letter written by Berg to ascertain what regulations the Decision referred to.
In his opinion letter to the Board, Berg indicates that the proposed design of the sewer pumping station in the plan is unacceptable to the DPW because it would exclusively serve the subdivision at the cost and liability to the Town of Holden. Berg first cites Section VI. E. 3. a of the Subdivision Control Regulations which provides that:
(S)anitaiy sewer lines of adequate size shall be installed in any development where the proposed development is located in the R-15 or R-20 zone and the development is within 300 feet of a trunk or main sewer.
Berg then acknowledges that because the proposed development is not within 300 feet of a trunk or main sewer, the Regulations do not require the plan to have a provision for sanitaiy sewerage. However, Footnote 8 to Table 2, Area Regulations, of Holden’s By-Law states that:
In the R-15 and R-20 Districts, all new residential construction . . . will conform to the R-40 district dimension standards listed in Table 2 if public sewer is unavailable, and said new residential construction will require the installation of a private septic system.
The DPW Director then reasoned that, taken together, these two regulations:
[E]stablish that sewers are not required for Stoney Brook, but unless they are actually provided the (d)eveloper will be required to build at R-40 density[3] and will additionally be required to meet all provisions of the State Sanitaiy Code for on-site systems. In other words, provision of sewers for this proposal could certainly be viewed as “for the convenience and profit of developer” item.
In sum, Berg determined that the proposed subdivision did not require sanitaiy sewer lines although it is in a R-20 zone because it is not within 300 feet of a trunk or main sewer.[4] However, the installation of a private septic system for the subdivision would be inconvenient to the plaintiff. Thus, it would be the plaintiffs best option to install a new sewer pumping station which would then pump the discharge from the subdivision into the public sewers. In Berg’s opinion, this
[S]cheme is far contrary to good facility planning unless there is no possibility of alternate solution(s) and unless there is a compelling public need for sewer service at the outset . . . neither of those conditions are present and the proposed scheme will represent a perpetual, additional, and unnecessary cost to the town and its sewer rate payers.
Since neither VI.E.3.a of the Subdivision Control Regulations and Area Regulation Table 2 of the By-law prohibits the plaintiff from installing the sewer pumping station, Berg points to the Town of Holden’s Rules and Regulations Relating to Chapter 9.5-4, the Construction and Use of Particular Sewers, as a basis for rejecting the plaintiffs sewage plan. Item 31 provides that:
Sewage will not be allowed to enter any public sewer or particular sewer under pressure without the permission of the Superintendent of Sewers.
Berg’s permission, in his capacity as the Director of the DPW,[5] is required for the new sewer pumping station because the discharge would enter the public sewer system. By merely withholding his permission, the subdivision plan is thus in non-compliance with Item 31 and cannot be approved by the Board. Additionally, Berg included several alternative sewage *647 schemes that would impose a lesser burden, if any at all, upon the Town of Holden.
As the Town correctly contends, the Board may, and in fact shall, establish Subdivision Control Regulations to protect the safety, convenience, and welfare of the inhabitants of Holden, including those regulating sewer systems. G.L.c. 41, §§81K to 81GG. The Appeals Court has held:
[T]hat G.L.c. 41, §81Q provides that the Board’s rules and regulations “shall set forth the requirements of the board with respect to . . . the installation of municipal services [in the subdivision] . . .” and the powers of the Board shall be exercised with due regard “for securing adequate provision for water, sewerage, drainage” . . . The effect of these provisions is to require a planning board to adopt subdivision control law, including provisions relating to any necessary sewer arrangements
Honvanian, 32 Mass.App.Ct. at 483.
However, the Board’s Rules and Regulations must be comprehensive, reasonably definite, and carefully drafted so that owners may know in advance what is or may be required of them and what standards and procedures will be applied to them so as not to deprive them of their due process. Castle Estates, 344 Mass, at 334. The right to enjoy life and liberty and to acquire, possess and protect property are secured to every citizen under the Constitution of Massachusetts and the Constitution of the United States. Brett v. Building Comm. of Brookline, 250 Mass. 73, 77 (1924). These guarantees include the right to own land and to use and improve it according to the owner’s conceptions of pleasure, comfort or profit, and of the exercise of liberty and the pursuit of happiness. Brett, 250 Mass, at 77. These rights are in general subject to the exercise of police power in its reasonable exercise on behalf of the public health, but only if the means are reasonably necessary for the accomplishment of the purpose and do not arbitrarily interfere with private business. Id.
Item 31 of Chapter 9.5-4 of the Rules and Regulations Relating to the Construction and Use of Particular Sewers, which is used by the Board as its basis for rejection pf the plan, is too vague to inform owners about the standards which they must meet. Regulations are valid only if they further plausible legislative objectives through reasonable means. See Daddario v. Cape Cod Commission, 56 Mass.App.Ct. 764, 772, 772 (2002), citing Bd. of Appeals of Hanover v. Housing Appeals Comm., 363 Mass. 339, 363, 364 (1973).
This Regulation, although it may serve a legitimate legislative goal of maintaining sanitary sewer systems for public health purposes, is nevertheless invalid because the means are not reasonable. The Regulation fails to establish any criteria or standards to the Board or DPW when evaluating sewer systems designs. See Daddario, 56 Mass.App.Ct. at 771, 772. Item 31 of these Rules requires permission from the Superintendent of Sewers before sewage may enter any public sewer or particular sewer under pressure. There is no accompanying regulation which specifies what the owner must undertake to receive permission. Nor is there any mandate or direction as to when and under what conditions the Superintendent may withhold his permission. This lack of directive consequently allows “untrammeled [administrative] discretion and arbitrary and capricious decisions in violation of the due process clause of the Fourteenth Amendment. . . and art. 10 of the Massachusetts Declaration of Rights.” See Daddario, 56 Mass.App.Ct. at 771, 772, citing Bd. of Appeals of Hanover v. Housing Appeals Comm., 363 Mass. 339, 363, 364 (1973). Since the Board bases its decision on a Regulation that is unreasonable and invalid, its decision is therefore arbitrary and unconstitutional because it may only disapprove a subdivision plan if it does not conform with a valid Rule or Regulation. See Strand, 5 Mass.App.Ct. at 23-24 (emphasis added).
Additionally, the Board may not exercise its authority to disapprove the plaintiffs subdivision plan on grounds that such disapproval would serve the best interest of the public. See Baker, 353 Mass. 141. In his letter to the Board, Berg indicated that the burden the sewage system scheme would impose upon the Town of Holden and availability of alternative plans justified his refusal to grant permission. Relying upon Berg’s refusal to grant permission and opinion that the system would detrimentally affect the communily, the Board disapproved the plaintiffs plan. The increase in cost and maintenance of the sewage pumping system, absent a particular regulation or by-law violation, cannot by itself serve as the reason for the Board’s disapproval because a planning board may not exercise its authority to disapprove a plan on the grounds that the interests of the town or public would be served by its disapproval. See Baker v. Planning Bd. of Framingham, 353 Mass. 141 (1967).
Additionally, the Board improperly rejected the plan in reliance upon Berg’s opinion. The Subdivision Control Law clearly establishes that a subdivision plan may, and in fact must be disapproved if it does not comply with the Board of Health recommendations. See G.L.c. 41, §81M. The Court has even allowed planning boards to consider recommendations from other municipal agencies, such as the Department of Public Works, in its approval process. In no instance, however, may a subdivision plan be disapproved on the grounds that the developer has failed to obtain approval or favorable recommendations from an agency other than the board of health. Id.
Item 31 of Chapter 9.5-4 of the Rules and Regulations Relating to the Construction and Use of Particular Sewers imposes the additional requirement upon a developer to obtain the DPWs permission for approval of a subdivision plan. Therefore Item 31 is also invalid because it directly contravenes the Subdivision Control Law because it requires the permission of a *648 municipal agency, other than the board of health, for approval of a subdivision plan. Therefore, the Board’s decision, which cites this Regulation and the DPWs refusal to grant permission as grounds for its disapproval of the plan, is also invalid.
2. The subdivision plan was improperly rejected on the basis that it violates Section V.A.l.f. of the Subdivision Control Regulations which prohibits the establishment of reserve strips because the Regulation is too vague and leaves the Board with unconstitutional discretion.
Section V.A.1.Í of the Subdivision Control Regulations of the Town of Holden provides that:
Reserve strips prohibiting access to streets or adjoining property shall not be permitted, except where, in the opinion of the Planning Board, such strips shall be in the public interest.
The term “reserve strips” is not defined in the Regulation or elsewhere in the Subdivision Control Regulations of the Town of Holden or under G.L.c. §41. Without a definition, the Regulation implies that reserve strips are any strips of land that prohibit access to streets or adjoining property. Otto Lies, a Board member, testified at the trial. Lies indicated that reserve strips, also referred to as “spite strips,” are prohibited because they have been used for the purpose of preventing access to streets in the subdivision. This purpose is nowhere present in the Subdivision Control Regulations. Nor is there any indication whether reserve strips, if they serve a legitimate objective and are not created solely for the purpose of preventing access to the subdivision, are permissible.
The plaintiff claims that the reserve areas along the subdivision roadways are not prohibited reserve strips because they are not designed for the purpose of preventing access to the streets of the subdivision. Rather, the reserve strips are designed so that retaining walls may be constructed along the right of ways. The construction of retaining walls is necessary in this subdivision to address issues of slope and topography located within the subdivision. The retaining walls must be constructed on the privately owned land abutting the street because, pursuant to Subdivision Control Regulation V.3.e, “[Retaining walls will not be approved nor shall they be constructed within the street right of way.” As a result, the plaintiffs only option is to reserve strips surrounding the right of way in the subdivision so that he may construct the subdivision adequately. Regulation V.A.l.f., prohibiting all reserve strips unless determined by the Board to serve the public interest, is unconstitutionally broad. Although this regulation may serve a legitimate interest in that it prohibits “spite strips,” it is not sufficiently tailored and also prevents reserve strips for any other, even necessary, purposes.
Although Regulation V.A. 1 .f provides an exception for reserve strips if they serve the public interest, it fails to provide any criteria or standards for Board when determining whether they are in the public interest. The lack of guidelines in Section V.A.l.f gives the Board unfettered discretion to determine not only what constitutes the prohibited reserve strips but also when such strips would serve the public interest. For the same reasons Item 31 of the Regulations is so vague that it provides unconstitutional discretion, the Board’s finding here also violates the plaintiffs due process.

ORDER FOR JUDGMENT

For the reasons set forth above, it is hereby ORDERED the judgment shall enter that the Planning Board’s disapproval of the plaintiffs subdivision plan was unconstitutional. It is further ORDERED that the Planning Board issue a decision approving the plaintiffs subdivision plan as submitted on May 11, 2000 forthwith.

The Regulations became effective on December 4, 1973.

If the plaintiff needed to install septic systems, the minimum lot size would increase to 40,000 square feet instead of 20,000 square feet in an R-20 zone, and the number of permitted lots would be roughly half of the proposed 75.

It is undisputed by both parties that the proposed development is located in a R-20 zone but is not within 300 feet of a trunk or main sewer.

There is no dispute that the Director of DPW is the equivalent of the Superintendent of Sewers.